Commonwealth of Pennsylvania, Pennsylvania State Police, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission and Phyllis M. Sweeting, Respondents.

Argued November 16, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, WILLIAMS, JR. and MACPHAIL.

Joseph S. Rengert, with him John L. Heaton, Chief Counsel, and Francis X. O'Brien, Jr., for petitioner.

G. Thompson Bell, Assistant General Counsel, with him Robert S. Mirin, General Counsel, for respondent, Pennsylvania Human Relations Commission.

OPINION BY JUDGE MACPHAIL, March 11, 1983:

After being rejected as an applicant for admission to the Pennsylvania State Police Academy as a cadet on September 5, 1979, Phyllis M. Sweeting (Complainant), filed a complaint with the Human Relations Commission (Commission) alleging that she had been discriminated against by the Pennsylvania State Police (Employer) as a handicapped or disabled person in violation of Section 5(a) of the Pennsylvania Human Relations Act (Act).[1] Finding probable cause, the Commission ordered a hearing after efforts through conference, conciliation and persuasion were unsuccessful.

After a hearing before a panel, the Commission found that Employer had rejected Complainant because it regarded her as having an impairment which would interfere with her ability to breathe due to a medical condition diagnosed as allergic rhinitis for which she had been receiving treatment since 1973. In addition, the Commission found that Complainant would be able to perform the essential duties of a cadet despite her allergy. The Commission concluded that Complainant was a handicapped or disabled person within the meaning of the Act and that Employer had discriminated against her because of her non-job related handicap or disability. The Commission's order directed appropriate relief, the precise nature of which is a matter not at issue in this appeal.

---

[1] Act of October 27, 1955, P.L. 744, as amended, 43 P.S. §955(a).

Employer contends to this Court that: (1) it was denied due process of law at the Commission hearing; (2) the Commission erred when it concluded that Complainant was a handicapped or disabled person under its regulations; (3) the "regarded as" component of the Commission's regulations found at 16 Pa. Code §44.4[2] is an improper extension of the Act and (4) assuming for purposes of argument that Complainant is handicapped or disabled, her disability is job related.

---

[2] 16 Pa. Code §44.4 provides, in pertinent part, as follows:

*Handicapped or disabled person*—Includes the following:

(i) A person who:

(A) has a physical or mental impairment which substantially limits one or more major life activities;

(B) has a record of such an impairment; or

(C) *is regarded as having such an impairment.*

(ii) As used in subparagraph (i) of this paragraph, the phrase:

(A) "physical or mental impairment" means a physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genitoudinary; hemic and lymphatic; skin and endocrine or a mental or psychological disorder, such as mental illness, and specific learning disabilities.

(B) "major life activities" means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

(C) "has a record of such an impairment" means has a history of or has been misclassified as having a mental or physical impairment that substantially limits one or more major life activities.

(D) "is regarded as having an impairment" means has a physical or mental impairment that does not substantially limit major life activities but that is treated by an employer or owner, operator, or provider of a public accomodation as constituting such a limitation; has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impair-

Our scope of review in these matters is to determine whether the Commission's adjudication is in accordance with the law, whether its findings of fact in support of its conclusions are based upon substantial evidence and whether Employer's constitutional rights were violated. *Slippery Rock State College v. Pennsylvania Human Relations Commission,* 11 Pa. Commonwealth Ct. 501, 314 A.2d 344 (1974).

In the recent past, this Court has decided two cases[3] involving discrimination by reason of handicap or disability, both of which are on appeal to our Supreme Court, and both of which arose prior to the effective date of the Commission's regulations found at 16 Pa. Code §§44.1-44.21. This is our first case, then, wherein the Commission's regulations are clearly applicable and wherein a handicap or disability has been determined to exist by reason of the language contained in those regulations.

## Factual Background

It appears from the record that Complainant was referred by her family physician to Dr. Winter, a physician specializing in allergies, in 1973. Complainant at that time was in her early teens. Dr. Winter diagnosed her condition as allergic rhinitis due to sensitivity to ragweed pollen, house dust and molds. At that time, she was placed on a regimen of hyposensitization injections and symptomatic medication consisting of the drug drixoral, an antihistamine. She

---

ment; or has none of the impairments defined in subparagraph (i)(A) of this paragraph but is treated by an employer or owner, operator, or provider of a public accommodation as having such an impairment. (Emphasis added.)

[3] *National Railroad Passenger Corp. v. Pennsylvania Human Relations Commission,* Pa. Commonwealth Ct. , 452 A.2d 301 (1982) and *Philadelphia Electric Co. v. Pennsylvania Human Relations Commission,* Pa. Commonwealth Ct. , 448 A.2d 701 (1982).

continued with that medication up to the time of her physical examination by Employer with the exception of a few years while she was in college when she did not receive the injections. At the time of the physical examination she was receiving the injections on a weekly basis. At the time of the hearing before the Commission on February 2, 1981 she was receiving two injections every two weeks. When Complainant filled out a medical history form as part of Employer's physical examination requirements she indicated that she had or had had asthma, hay fever and an allergy and that she had or had had nose and sinus trouble.

Employer's examining physician, Dr. Dutlinger, filed a notice of medical rejection of Complainant with Employer's Bureau of Personnel which stated that because of Complainant's allergic condition, which the physician found to be permanent and not correctable, Complainant did not conform to designated standards for acceptance. Dr. Dutlinger also noted on the rejection form:

> History of severe allergic condition requiring weekly injection treatments. Condition would probably be aggravated by exposure to stables and horse environment. [4]

In his testimony before the Commission, Dr. Dutlinger said that Complainant was the first applicant he had rejected because of an allergic condition but he explained that he regarded Complainant as having a rather severe allergy which would be aggravated, in all probability, by her period of training as a cadet. Applicants previously admitted with allergic conditions, the doctor said, were admitted because their allergies seemed mild. He testified that 25 to 30 percent

---

4 As part of a cadet's training, a 12 hour course in horsemanship is required including care of the animals and the facilities in which they are housed.

of all applicants have a history of an allergic disorder of some kind.

After the Complainant was rejected, Dr. Winter sent a letter to Employer confirming that Complainant was in his care, that she was on medication for allergic rhinitis, that she no longer encountered drowsiness from taking the antihistamine, that she is unable to breathe freely through her nose, that her condition was not permanent and was correctable and that, in his opinion, Complainant's condition would not be aggravated by exposure to stables and horses. In his testimony before the Commission, Dr. Winter said Complainant's condition was permanent and was correctable to a certain extent by medication. He also testified that Complainant was not disabled or limited in her ability to work and that she had no impairment of life functions by reason of her allergy. He further testified that there were no duties associated with the work of a Pennsylvania State Police Officer that she could not perform because of her allergies.

After reviewing Dr. Winter's letter, Dr. Dutlinger reaffirmed his previous medical rejection of Complainant.

Complainant testified that she was not impaired by reason of her allergy and medication in any of her physical activities, neither those related to recreation nor those related to previous and subsequent employment,[5] that there were no restrictions in her life style, that she had never been hospitalized for her allergy, that she can go up to 8 weeks without injections and that she had never been rejected for employment for physical reasons.

Employer's witness, Dr. Trautlein, professor of an ear, eye, nose and throat clinic at Pennsylvania State

---

[5] Although Complainant failed the strength and agility test for admission to the Academy in March of 1978, she did pass it on September 5, 1979.

University, who did not examine Complainant but who evaluated her on the basis of testimony and records, stated that Complainant was in the top ten percent of allergy sufferers and that he would concur with Dr. Dutlinger's conclusions.

Sgt. Sparks of the Pennsylvania State Police and Mr. Wagner an Industrial Psychologist testified for Employer concerning the physical activities cadets engage in as a part of their training.

## Constitutional Challenge

Employer contends that it has been denied due process because the prosecutorial and adjudicatory functions were impermissibly commingled by virtue of the fact that one assistant general counsel of the Commission presented the case for Complainant and another assistant general counsel of the Commission advised the hearing panel. Employer alerted the Commission well in advance of the hearing of its concerns in this regard but the Commission refused to change its procedures.

The same objection was raised and disposed of contrary to the Employer's position in *Pennsylvania Human Relations Commission v. Thorp*, 25 Pa. Commonwealth Ct. 295, 361 A.2d 497 (1976). Employer argues that that case is distinguishable from the one now before us because in *Thorp* there was virtually no dispute as to the facts whereas here there is a definite conflict in the expert opinion testimony. Noting that Judge BLATT, writing for the majority in *Thorp*, stated that the Commission's hearing practice came "perilously close" to a constitutional violation, Employer contends that the facts in this case take it over the line into the realm of at least the appearance of possible prejudice.

Our Court has examined this area of the law in other cases and has concluded that as long as the two

functions are separate in fact, that is, where both counsel although related to the same agency operate independently of one another during the course of the hearing, minimum due process is satisfied. *Togans v. State Civil Service Commission,* Pa. Commonwealth Ct. , 452 A.2d 576 (1982) and cases cited therein. In the instant case, we are unable to conclude that there was even the appearance of impropriety in the conduct of counsel and that our decision in *Thorp* controls.

## Application of Commission Regulations

Inasmuch as the key to this case is controlled by the Commission's regulations, we must first determine whether the regulations are an improper extension of the Act. As we have noted in *Philadelphia Electric Co.,* the Legislature did not define "handicap" or "disability" in the Act. The Legislature did, however, give to the Commission broad rule-making power to effectuate the policies and provisions of the Act.[6] When the Commission adopted its regulations defining those key words in the statute, they were engaged in legislative, not interpretative, rule-making. When we review such a regulation, we are not at liberty to substitute our own judgment for that of administrative officers who have kept within the bounds of their administrative powers. *Uniontown Area School District v. Pennsylvania Human Relations Commission,* 455 Pa. 52, 313 A.2d 156 (1973). Unless we find the regulations to be so at odds with fundamental principles of law as to constitute whim or fancy, we may not contravene the promulgated regulations. *Id.*

In the instant case, the Commission not only tracked the Act but followed verbatim the language used by Congress in the Rehabilitation Act of 1973, *as amended,* 29 U.S.C.A. §706(7) (West Supp. 1976-1981)

---

[6] Section 7 of the Act, 43 P.S. §957.

in defining a handicapped or disabled person.[7] We, consequently, cannot say that the Commission's regulations are an improper extension of the law or that they are at odds with fundamental principles of law.

Complainant bears the initial burden of establishing a prima facie case of unlawful discrimination. *General Electric Corp. v. Pennsylvania Human Relations Commission*, 469 Pa. 292, 365 A.2d 649 (1976). She meets this burden by showing that she is a member of a protected minority, that she applied for a job for which she was qualified and that the employer continued to seek other applicants of equal qualifications. Once she establishes those elements, the burden then shifts to the employer to show that the rejection of the complainant was not in violation of the Act. *Id.*

Complainant contended and the Commission found that her physical impairment did not substantially limit her major life functions. There is substantial evidence in the record to support that finding. Therefore, Complainant does not fall within subclauses (A) and (B) of the Commission's definition of a handicapped or disabled person.[8]

Complainant contended and the Commission found that she was, however, regarded by Employer as having a physical impairment which substantially limited one or more of her major life activities under subclause (C) of the Commission's definition.[9] Employer specifically rejected Complainant because of a permanent, non-correctable allergy condition for which Complainant received weekly injections.[10] The Com-

---

[7] *See* 16 Pa. Code §44.4 definition of "handicapped or disabled person", subsections (i)(A)-(C).

[8] *See* note 2.

[9] *See* note 2.

[10] Although Employer contends in its brief and presented testimonial evidence to the Commission panel that Complainant also suffered from asthma, a fact which influenced the medical rejection,

mission found that that condition did not substantially limit Complainant's major life activities but that she was treated by Employer as having such a limitation. Those findings, according to the Commission, brought Employer within clause (ii) sub-clause (D)[11] of the Commission's definition of a handicapped or disabled person. Again, the Commission's findings in this regard are supported by substantial evidence in the record although there is other evidence to the contrary.

On the basis of the foregoing, we must affirm the Commission's conclusion that Complainant was regarded by Employer as a handicapped person.[12]

Employer urges that if we dismiss its other arguments, we must, nevertheless, hold that Complainant's physical impairment is job-related. The medical rejection did state that Complainant's condition would *probably* be aggravated by exposure to stables and

---

the rejection itself does not mention an asthmatic condition as a basis for rejection.

[11] *See* note 2.

[12] This Court is well aware of the long range ramifications of such a result. If an Employer rejects an applicant for medical reasons, that act under the Commission's regulations is an impairment, per se, of a major life activity, *i.e.* employment. Unless the employer, therefore, can show that the physical condition is job-related, a burden not easy to meet, *see National Railroad Passenger Corp.*, the employer faces the probability of defending a complaint under the Act. While we are well aware of the laudable purpose of the Act to foster the full employment of all of our citizens regardless of their race, color, religious creed, ancestry, handicap or disability, Section 2(b) of the Act, 43 P.S. §952(b), we do not believe that an employer's rejection of an applicant based upon a recommendation of its medical expert which has some basis in fact, is discrimination as that term is understood and has been applied to conditions of race, color, religious creed or ancestry. We are especially conscious of the need for some employer discretion in such matters where the employer, as here, is responsible for public safety and welfare.

We feel bound, nevertheless, to interpret the statute liberally because of its remedial nature and to enforce the Commission's regulations since they are legislative in nature.

horse environment. Employer states that the damage to Complainant's health was a significant factor in refusing to accept Complainant as a cadet.

The Commission's regulations define a non-job related handicap or disability by stating, *inter alia,* that:

> A handicap or disability is not job-related merely because the job may pose a threat of harm to the employe or applicant with the handicap or disability unless the threat is one of demonstrable and serious harm.

16 Pa. Code §44.4. The regulations also provide that:

> An employer shall not . . . refuse to hire . . . an . . . applicant because of a present handicap or disability which is not job-related but which may worsen and become job-related . . . provided that this subsection shall not be construed so as to impose an undue hardship on the employer.

16 Pa. Code §44.15.

Employer argues that the testimony of its witnesses concerning the effect upon Complainant's condition of her cadet training and her ultimate capability to perform the duties of a State Police officer is entitled to more weight than the evidence presented by the Commission to the contrary. Employer recognizes that it is the Commission's function to resolve conflicts in the evidence and to decide where the weight of the evidence must be given. The Employer's evidence was that Complainant's health *probably* would be affected by cadet training and that *perhaps* she would be unable to carry out efficiently the duties assigned to her. Dr. Winter testified that Complainant would not be affected by horses or stable conditions, although he had not tested her for that exposure. He based his opinion on the fact that Complainant had no history of those conditions affecting her allergies. He testified, also, as we have noted, that Complainant's

allergic condition would not prevent her from performing any of the duties of a Pennsylvania State Police Officer. The Commission weighed the testimony on both sides of this issue and concluded that Dr. Winter's testimony was sufficient to offset that of Dr. Dutlinger and Dr. Trautlein. As we have said, that was the Commission's proper function and we will not disturb it.

We conclude that Employer's evidence falls far short of proving a demonstrable or serious threat of harm to Complainant; nor has Employer shown that it will suffer undue hardship if Complainant is employed.

### Summary

It is this Court's conclusion that there is substantial evidence in the record of this case to support the Commission's findings of fact and we are also of the opinion that the Commission's conclusions that (1) Complainant is a handicapped person within the purview of the Commission's regulations which have the effect of law and (2) Complainant's handicap is non-job related, are in accordance with the law.

The Commission's order, accordingly, must be affirmed.

### Order

The order of the Pennsylvania Human Relations Commission dated May 18, 1981 is affirmed.

