Pennsylvania State Police, Petitioner *v*. Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission and Governor Williams, Respondents.

622

Argued September 10, 1984, before Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

*Joseph S. Rengert*, Assistant Counsel, for petitioner.

*G. Thompson Bell*, Assistant General Counsel, with him, *Elisabeth S. Shuster*, General Counsel, for respondents.

Opinion by Judge Rogers, October 31, 1984:

Governor Felton Williams (complainant) applied for admission as a cadet to the Pennsylvania State Police Academy on February 17, 1981. Candidates for acceptance must pass in sequence: (1) an initial screening; (2) a written examination administered by the Pennsylvania Civil Service Commission; (3) a medical examination by the candidate's personal physician; (4) a strength and agility test; (5) a medical examination by the State Police medical officer; (6) an oral interview; and (7) a background investigation. The complainant successfully completed all phases of the selection process up to and including the strength and agility test but was eliminated at the stage of his medical examination by the State Police medical officer.

Williams filed a complaint with the Pennsylvania Human Relations Commission (Commission) alleging that the Pennsylvania State Police had engaged in an unlawful discriminatory practice contrary to Section 5(a) of the Pennsylvania Human Relations Act (Act), Act of October 27, 1955, P.L. 744, as amended, 43 P.S. §955(a) by rejecting his application for admission to the Pennsylvania State Police Academy because of a non-job related handicap or disability, the loss of his right kidney. Finding probable cause for the complaint, the Commission ordered a hearing after efforts to conciliate the complaint were unsuccessful.

After a hearing, the Commission found that the State Police had rejected the complainant because he had only one kidney; that the risk to the complainant posed by the activities of State Police cadets or troopers is not greater than the risk to any other cadet or trooper; and that the loss of one kidney did not limit the complainant's ability to perform the physical activities required of State Police cadets. The Com-

mission concluded that the State Police regarded the complainant as having a physical impairment which substantially limited a major life activity, that is, working; that the State Police had not established that the complainant's handicap or disability was job-related; and that the State Police had not established that the complainant would not have been hired absent the discrimination. It ordered that the State Police process the complainant for placement in the next cadet class and pay him back pay in a lump sum in the amount that he would have earned had he been placed in the May 11, 1981 cadet class less any amount he has earned since May 11, 1981 or will earn until he has either been placed in a cadet class or eliminated from further consideration.

The State Police have appealed, contending: (1) that the Commission erred in concluding that the complainant was a handicapped person; (2) that assuming the Commission's conclusion that the complainant was a handicapped person to be correct, it erred in concluding that the handicap was not job-related; (3) that the Commission's findings that the complainant was rejected because he had only one kidney and that the risk to him posed by the activities of State Police cadets or troopers was not greater than the risk to any other cadet or trooper were not supported by substantial evidence; and (4) that the Commission abused its discretion by awarding back pay to the complainant. None of these arguments is convincing.

Our scope of review is to determine whether the Commission's adjudication is in accordance with the law and whether its findings of fact are based on substantial evidence. *Slippery Rock State College v. Pennsylvania Human Relations Commission,* 11 Pa. Commonwealth Ct. 501, 314 A.2d 344 (1974).

Section 5 of the Act, 43 P.S. §955, provides that:

It shall be an unlawful practice, unless based upon a bona fide occupational qualification . . . :

(a) For any employer because of the . . . non-job related handicap or disability of any individual to refuse to hire or employ . . . or to otherwise discriminate against such individual with respect to . . . hire . . . or privileges of employment, if the individual is the best able and most competent to perform the services required.

The Legislature did not define "handicap" or "disability" in the Act. The Commission, however, pursuant to its legislative rule-making power to effectuate the policies and provisions of the Act, as provided by Section 7(d) of the Act, 43 P.S. §957(d), promulgated a regulation at 16 Pa. Code §44.4 which we held properly tracked the Act in *Pennsylvania State Police v. Pennsylvania Human Relations Commission*, 72 Pa. Commonwealth Ct. 520, 457 A.2d 584 (1983). The regulation pertinently provides that a handicapped or disabled person includes the following:

(i) A person who:

(A) has a physical or mental impairment which substantially limits one or more major life activities;

(B) has a record of such impairment; or

(C) is regarded as having such an impairment.

(ii) As used in subparagraph (i) of this paragraph, the phrase:

(A) "physical or mental impairment" means a physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body sys-

tems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin, and endocrine or a mental or psychological disorder, such as mental illness, and specific learning disabilities.

(B) "major life activities" means functions such as . . . working.

. . . .

(D) "is regarded as having an impairment" means has a physical or mental impairment that does not substantially limit major life activities but that is treated by an employer or owner, operator, or provider of a public accommodation as constituting such a limitation; has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or has none of the impairments defined in subparagraph (i)(A) or this paragraph but is treated by an employer or owner, operator, or provider of a public accommodation as having such an impairment.

The Commission concluded that the State Police regarded the complainant as having a physical impairment which substantially limited him in the conduct of a major life activity, working, and therefore that he was a handicapped or disabled person within the meaning of 16 Pa. Code §44.4(i)(C). The State Police contend that the complainant was not a handicapped or disabled person under the Act because he testified that he believed he could perform all of the duties and functions of a cadet and trooper and because the State Police medical officer testified that he did not consider the complainant to be suffering

any disability at the time he examined him. The facts that the complainant believed he could perform all the duties which would be required of him and that the medical officer did not consider him to be disabled are not relevant to a determination of whether the complainant was *regarded* as having such an impairment.

In *Pennsylvania State Police v. Pennsylvania Human Relations Commission,* we held that an applicant for admission to the Pennsylvania State Police Academy had been discriminated against when her application was rejected because the State Police medical officer found the applicant to have an allergic condition which he, the doctor, considered to be permanent and not correctable and which would be aggravated by the required exposure to horses and stables. We concluded that the applicant was a handicapped or disabled person because the State Police regarded her as having an impairment and wrote that "[i]f an Employer rejects an applicant for medical reasons, that act under the Commission's regulations is an impairment, per se, of a major life activity, i.e. employment." *Id.* at 530 n.12, 457 A.2d at 589 n.12. The State Police medical officer testified and the Commission found[1]

---

[1] The State Police contend that this finding is not supported by substantial evidence because, as they assert, the complainant's high blood pressure on the day of the medical examination would have resulted in his application being rejected even if he had not lost one kidney. As support for their contention, the State Police note that their medical officer found the complainant to have high blood pressure during the examination; that he marked this fact on his report; and that the complainant admits that the doctor explained to him following the examination that his high blood pressure and the loss of one kidney were the reasons for his rejection. High blood pressure, however, as the doctor explained at the hearing and as he indicated on the notice of medical rejection, is considered by the State Police to be a correctable condition permitting the applicant to reapply when he can show that his blood pressure is normal. The doctor indicated on the notice of medical rejection that the complain-

that the complainant had been rejected because he had one kidney. Therefore the Commission's conclusion that the complainant was a handicapped or disabled person was proper.

The State Police also contend that the Commission erred in concluding that the complainant's handicap or disability was not job-related because there is substantial evidence in the record showing that the functions of a cadet or trooper may pose a threat of demonstrable and serious harm to the complainant. 16 Pa. Code §44.4(D)(ii) provides that "[a] handicap or disability is not job-related merely because the job may pose a threat of harm to the employe or applicant with the handicap or disability unless the threat is one of demonstrable and serious harm." The official comment further provides that:

> Section 44.4(5)(ii) [sic] . . . is specifically intended to afford the same degree of self-determination as is available to able-bodied persons. This is considered consistent with the general goal of aiding persons with handicaps or disabilities to be full, independent participants in Pennsylvania life.

---

ant's loss of one kidney was a permanent and uncorrectable condition which would not permit the complainant to reapply at any time. The complainant received a letter from the Director of the State Police's Bureau of Personnel which listed only a noncorrectable condition as the reason for the rejection. Indeed, the doctor testified that:

> he [the complainant] was rejected on the basis of only having one kidney not on the basis of hypertension. We did not evaluate that any further. That would have required further information to be supplied by his family physician or a physician of his choice before we would have rejected him on that basis.

The testimony and the letter of the Director of the State Police's Bureau of Personnel provided substantial evidence by the Commission's finding that the complainant was rejected because he had only one kidney.

The record shows that a blow to the kidney can cause demonstrable and serious harm and that, although the State Police medical officer testified that during his eighteen years with the State Police he did not learn of any cadet who suffered a kidney injury during training, the activities which a cadet is required to perform can result in a harmful blow to the kidneys. The Commission found, however, on substantial evidence in the record[2] that State Police work posed no greater risk of harm to the complainant than it posed to non-handicapped cadets or troopers. The purpose of 16 Pa. Code §44.4(ii) was to give the same degree of self-determination to the handicapped as to the able-bodied. It is inconsistent with that purpose to treat a threat of harm equally posed to handicapped and able-bodied persons as job-related only in the case of the handicapped. We therefore conclude that the Commission did not err in concluding that the complainant's handicap or disability was not job-related.

The State Police finally contend that the Commission abused its discretion by awarding back pay to the complainant because it is unkown whether he would have successfully completed the oral interview and the background investigation, the two remaining steps in the application process.

Section 9(f) of the Act, 43 P.S. §959(f), empowers the Commission to order a party engaging in an un-

---

[2] The State Police contend that this finding is not supported by substantial evidence because of testimony to the effect that the consequences of an injury to the complainant's remaining kidney would be much greater than the consequences of a kidney injury to someone who has both his kidneys. The State Police, however, confuse the risk of the occurrence of an injury and the consequences of that injury after it has occurred. The Commission relied on the testimony of the State Police medical officer that the higher risk to which the complainant would be exposed was the same risk to which anyone who chooses to be a state trooper is exposed. This opinion was also expressed by the surgeon who removed the complainant's kidney.

lawful discriminatory practice "to cease and desist from such unlawful discriminatory practice and to take such affirmative action including but not limited to hiring, reinstatement or upgrading of employees, with or without back pay . . . as, in the judgment of the Commission, will effectuate the purposes of this act. . . ." In *Murphy v. Pennsylvania Human Relations Commission*, 77 Pa. Commonwealth Ct. 291, 308, 465 A.2d 740, 748 (1983) we wrote that:

> the Commission's power to fashion remedies is virtually plenary and exclusive. . . . As our Supreme Court noted in the case of Pennsylvania Human Relations Commission v. Alto-Reste Park Cemetery Association, 453 Pa. 124, 306 A. 2d 881 (1973), our scope of review of a Commission decision to order a particular remedy or not is limited. There the court noted "that the expertise of the Commission in fashioning remedies is not to be lightly regarded [,]" *id.* at 134, 306 A.2d at 887, and concluded that Commission orders pertaining to remedies should not be disturbed on appeal " '*unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.*' " Id. at 134, 306 A.2d at 887 (emphasis in original) quoting Fibreboard Paper Products Corp. v. N.L.R.B., 379 U.S. 203, 216 (1964)).

We cannot say that the Commission's award of back pay was an attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act. Further, it must be noted that it is not the complainant's fault that it is still unknown whether he will pass the two remaining steps in the application process. This circumstance is, of course, the result of the action of the State Police which the Com-

mission has found to be discriminatory. In this class of case, after the complainant has made a prima facie showing of discrimination, the burden of proving that he would not have been hired even absent discrimination lies with the employer. *League of United Latin American Citizens v. City of Salinas Fire Department,* 654 F.2d 557 (9th Cir. 1981) ; *Rodriguez v. Taylor,* 569 F.2d 1231 (3d Cir. 1977) ; *Day v. Mathews,* 530 F.2d 1083 (D.C. Cir. 1976). The State Police have not shown that the complainant would not have been accepted as a cadet absent its discriminatory action.

## Order

And Now, this 31st day of October, 1984, the order of the Pennsylvania Human Relations Commission in the above-captioned matter is affirmed.

---

Concurring and Dissenting, Opinion by Judge MacPhail:

I concur with that part of the majority opinion which affirms the Commission's conclusion that the State Police committed a discriminatory act when it rejected Mr. Williams as an applicant because of a physical disability. I must dissent, however, to the award of back pay.

It is true that the Commission has broad discretion to fashion a remedy, including the authority to award back pay, but I am of the opinion that the Commission abused its discretion in the instant case. The record is clear that the applicant had not completed two of the required processes for employment. In addition, it does appear from the record that the applicant also has high blood pressure which may or may not have temporarily disqualified him after further evaluation had the single kidney condition not been discovered.

In any event, there is no assurance that the applicant would have been accepted as a cadet had he not had a physical handicap.

I do not believe that penalties should be imposed upon prospective employers who act in good faith and, in this instance, for the applicant's own well-being, when rejecting applicants for employment.

I am well satisfied that Mr. Williams should be re-processed as an applicant, but the award of back wages, in my opinion, is unwarranted under the facts and circumstances of this case.