537 A.2d 897

Orweco Frocks, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Respondent.

Argued November 19, 1987, before Judges DOYLE and BARRY, and Senior Judge KALISH, sitting as a panel of three.

*Charles E. Friedman, Friedman & Hoch, P.C.,* for petitioner.

*Ellen K. Barry,* Assistant Chief Counsel, for respondent.

*Dante J. Picciano, Angino & Rovner, P.C.,* for intervenor, Donald Brackbill.

OPINION BY JUDGE DOYLE, February 9, 1988:

This is an appeal by Orweco Frocks, Inc. (Employer) from an order of the Pennsylvania Human Relations Commission (Commission) that directed Employer to cease and desist from discriminating on the basis of age and to pay to Donald R. Brackbill (Complainant), a former employee, a lump sum of $33,532 plus six percent interest per annum thereon. The Commission's order declined to allow Employer to take a credit for unemployment compensation benefits received by Complainant.

The instant suit began when Complainant filed a complaint with the Commission alleging that he had been dismissed on February 3, 1984 from his position as a shipping room foreman on the basis of his age, then fifty-four years. The Commission found probable cause to credit the complaint and held a hearing. The hearing examiner found that Employer was originally a partnership formed by Joseph Confino, Morris Weiner and Harry Oriole; that it was later incorporated; that during the 1960s the corporation was bought out by the Orioles and then bought out by the Weiners in the 1980s. Mr. Weiner had been running the corporation's Pennsylvania operations, but after the buy-out, this role was filled briefly by Mr. Mevorah, who was replaced in December 1983 by Robert Farber. It was Farber who made the decision to terminate Complainant. Complainant's

immediate superior at the time of his termination was Myer Bloom. The hearing officer found that Complainant had established a *prima facie* case of age discrimination by presenting evidence that he belonged to a protected class; that he was performing duties he was qualified to perform; that he was discharged; and that a continuing need for the services Complainant had been performing existed. At the time the complaint was lodged, Employer was represented by Morton Seidenberg, shipping manager, who, in response to a Commission inquiry, sent a letter to the Commission's investigator advising that individual that Complainant was not terminated because of job performance but for economic reasons (job consolidation) and that Complainant's age was not a factor in Employer's decision to terminate him. During a deposition taken on December 23, 1985 in preparation for this litigation, however, Farber stated that Complainant had been fired for poor job performance. Employer, in rebutting the *prima facie* case by showing a legitimate reason for its termination action, attempted to reconcile these inconsistent reasons by presenting testimony that Seidenberg had *assumed* the termination was for economic reasons and had not verified this assumption with Farber. The hearing officer found that Complainant had demonstrated that the asserted reason for his termination—was poor performance—was pretextual. In finding that Complainant met his burden to show pretext, the hearing examiner noted that by April 1984, Seidenberg had taken over the shipping room and, as of July or August 1985 (several months before Farber's deposition), Seidenberg had succeeded Farber as Chief Operating Officer; yet Employer asserted Seidenberg was actually unaware whether or not the termination was for economic reasons, that he had assumed that it was, and that he was, in fact, unaware of the real reason, *i.e.*, job-perfor-

mance. The hearing officer also noted that Complainant had never been advised that his performance was inadequate and found that this fact undermined Employer's contention that the firing was based upon poor performance. Other facts found by the hearing officer that caused her to find Employer's reasons for the termination pretextual included statements by other employees to Complainant and his wife that the discharge was for economic reasons and Seidenberg's offer of reemployment to Complainant after he had been fired. Additionally, the hearing officer found that Farber's opinion of Mr. Lower's job performance (Lower replaced Complainant in part) was "curiously lukewarm." Further, the hearing officer found persuasive the fact that several other employees of Employer were terminated within a short period of time for reasons first described as economically-motivated and later as performance-motivated. Having determined that Complainant met his burden to show age discrimination, the hearing officer recommended the relief previously described, and that remedy was adopted by the Commission. Employer's appeal to this Court ensued.

On appeal, Employer presents several arguments that we shall deal with *seriatim*. We are cognizant, of course, of the fact that our scope of review is limited to determining whether the Commission's necessary findings are supported by substantial evidence, and whether there has been a constitutional violation or an error of law. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.

Employer's first contention is that the *prima facie* burden as set forth in the adjudication was erroneous. The adjudication stated the *prima facie* burden as follows: Complainant (1) at the time of the action complained of was a member of a protected class (2) who was doing duties for which he was qualified (3) was ter-

minated and (4) Employer sought a replacement with similar qualifications *or* otherwise demonstrated a continuing need for the services Complainant had been performing. Employer disputes prong 2 as a matter of fact, asserting Complainant was not qualified. Claimant, however, had been employed by Employer for thirty years and testified that prior to his termination, he had never been told that his job performance was inadequate. We believe this was sufficient to establish the *prima facie* case with respect to prong 2. The disjunctive statement in prong 4 is also an issue. Employer contends that the case upon which the Commission relied, *Loeb v. Textron, Inc.*, 600 F.2d 1003 (1st Cir. 1979), does not enunciate the *prima facie* burden as stated by the Commission's adjudication. *Loeb*, in prong 4, required the employee to show that the employer "sought a replacement with qualifications similar to his own, *thus* demonstrating a continuing need for the same services and skills the employee performed." *Id.* at 1013 (emphasis added and footnote omitted). In other words, *Loeb* did not enunciate a disjunctive test, but required a showing of a replacement. At the time briefs were filed in this case, the parties did not have the benefit of our opinion in *Montour School District v. Pennsylvania Human Relations Commission,* 109 Pa. Commonwealth Ct. 1, 530 A.2d 957 (1987), wherein we adopted the *prima facie* burden set forth by the Commission in an age discrimination case. That burden was stated as follows:

1. At the time of the challenged action [Complainant] belonged to a protected class;

2. [Complainant] was performing duties that he was qualified to perform;

3. [Complainant] was discharged from his position; and

4. There was a continuing need for the services [Complainant] had been performing.

*Id.* at 4, 530 A.2d at 959. Employer, not having the benefit of *Montour*, contended that the Commission's *prima facie* case was without legal precedent. That, of course, is no longer true; however, we shall reexamine the *prima facie* burden as set forth in *Montour* in light of Employer's contentions here.

Employer argues that the burden as set forth in the adjudication would, under the facts here, eliminate the fourth requirement of the *prima facie* case in *Loeb*. First, we do not agree that the fourth requirement as enumerated in *Loeb* would be eliminated, merely lessened. Second, our state Supreme Court, in discussing the *prima facie* burden in cases filed with the Commission, recently stated that "it is appropriate to the remedial purpose of the [Pennsylvania Human Relations] Act that the prima facie case not be an onerous one." *Allegheny Housing Rehabilitation Corp. v. Human Relations Commission*, 516 Pa. 124, 532 A.2d 315 (1987). Additionally, the Commission, which is, of course, a recognized expert in discrimination matters, sets forth a compelling reason for the lesser burden. It explains that in situations involving a company-wide reduction in force, if proof that a discharged employee is replaced is required, the company could systematically terminate its oldest and generally highest paid employees and redistribute their functions among younger, less senior employees and escape liability under the Act if no new employees are added. We do not think that such result was intended by the legislature.

We have read closely the various federal court cases cited by Employer that applied the more stringent *Loeb* burden. Not a single case applying the *Loeb* burden involves the type of fact pattern arguably existing here, *i.e.*, an economic downturn in the company. Two of the cases cited by Employer that do involve such an alleged economic downturn do *not* use the *Loeb* tests. In *Gra-*

*ham v. F.B . Leopold Co., Inc.,* 602 F. Supp. 1423 (W.D. Pa.), *rev'd,* 779 F.2d 170 (3d Cir. 1985), the complainant alleged that he had been illegally discharged after twenty-four years with his employer on the basis of his age (52) in violation of Section 703 of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2, and Section 4 of the Age Discrimination and Employment Act of 1967 (ADEA), 29 U.S.C. §623. His position was filled by a forty-one year-old co-employee who had been with the company for five years. The court stated the fourth prong of the *prima facie* test as requiring the complainant to show that younger employees were treated more favorably. The Employer there presented deposition evidence (the case was decided on a motion for summary judgment) of declining sales and showed also that, of the five individuals whose positions were considered for consolidation, the complainant had the lowest performance evaluation. Thus, he was discharged. The court, again in the context of a motion for summary judgment, held that because the complainant had not shown in his ultimate (not *prima facie)* burden that younger employees with lower performance ratings were retained, he had not proven that the employer's reasons for the termination were pretextual. The grant of summary judgment in *Graham* was reversed because the trial court had, in granting the motion, improperly made inferences based upon the evidence. Nothing in the appellate court's opinion, however, indicates dissatisfaction with the *prima facie* burden enunciated by the district court.

The case that we find most analogous to the present situation is *Duffy v. Wheeling Pittsburgh Steel Corp.,* 738 F.2d 1393 (3d Cir.) *cert. denied,* 469 U.S. 1087 (1984). *Duffy,* a twenty-five-year employee, age 59, brought suit under ADEA after being terminated, assertedly pursuant to the employer's policy, which

called for a fifteen percent reduction in work force due to weak economic conditions in the steel industry. The company had terminated the four oldest and most highly paid salesmen, including Duffy. The fourth prong of the *prima facie* case enunciated by the court required Duffy to show only that others not in the protected class were treated more favorably. The Employer argued that its termination action was for economic reasons and was based upon his job performance. The district court found this to be pretextual because Duffy had sold more than the younger employees who were retained. The reasons why the employer's testimony was discredited are as follows:

Bolog stated that the key factor in deciding which salesmen to terminate was performance and that each person being terminated was to be informed as to the cause of his termination. Wheeling-Pittsburgh originally claimed that Bolog, Frank McElhinney, general manager, and Clyde Shelton, Duffy's immediate supervisor, made the decisions on whom to fire. McElhinney's testimony, however, revealed that Shelton was not consulted about Duffy's performance, even though Shelton was the most qualified to assess Duffy's performance. The district court found that McElhinney did not request any input from Shelton, and Shelton made no recommendation. Indeed, Shelton testified that Duffy's performance had not been evaluated since 1977, that neither McElhinney nor Bolog had reviewed any of Duffy's evaluations, and that the two younger salesmen retained in the Philadelphia district had never been evaluated before May of 1980.

Duffy himself testified that he was repeatedly informed that his discharge was due to

economic reasons only. According to Duffy, this reason was provided by Nicholas Weldon, vice-president for personnel, who told Duffy that the discharge was unrelated to his performance. Based on the testimony of both Duffy and Clyde Shelton, Duffy's direct superior, the district court determined that only after Duffy filed his complaint did Wheeling-Pittsburgh for the first time assert that Duffy was selected for termination based on comparative performance.

As a whole, therefore, the evidence lends credence to the district court's inference that the alleged 'poor performance' was a contrived story created by Wheeling-Pittsburgh after the fact. Because Wheeling-Pittsburgh's testimony and explanations were found not to be credible, they did not weigh against the evidence adduced by Duffy which supported the finding of pretext. Thus, the district court's finding of intentional discrimination cannot be held to be clearly erroneous. We therefore conclude that Duffy has carried his required burden.

*Id.* at 1397-98. While the quoted language does not address Duffy's *prima facie* burden, the facts bear a striking similarity to this case, and on those facts it was held that the district court did not err in finding Employer's reasons for its termination to be pretextual. In addition to the factual similarities, we believe that *Duffy*, while not controlling, is also instructive on the issue of what should constitute the *prima facie* burden because it demonstrates that in age discrimination cases where economic turndown is alleged, the complainant need *not* show in his *prima facie* case that he was replaced at all or that he was replaced by a younger individual.[1] A

---

[1] As was observed in *Maxfield v. Sinclair International*, 766 F.2d 788 (3d Cir. 1985), *cert. denied*, 474 U.S. 1057, (1986); "age,

lesser *prima facie* burden is sufficient. Accordingly, we shall reaffirm our holding in *Montour* with respect to the *prima facie* burden in an age discrimination case brought before the Commission.

Employer next argues that the Commission misquoted the law when it stated that "Complainant's burden of *establishing a prima facie case* merges with his ultimate burden of persuading the trier of fact that there was intentional discrimination." It asserts that the correct burden as set forth in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981) states that the complainant's burden of *showing pretext* (not of establishing *prima facie* case) merges with his ultimate burden of persuasion. Employer asserts that the Commission's statement of the law eliminates the burden of proving a *prima facie* case. We agree that the Commission's phraseology could have been better, but in light of the fact that the adjudication also clearly stated that the ultimate burden of persuasion was on Complainant and that Complainant met both the *prima facie* burden and the ultimate burden of persuasion, we deem the Commission's substitution of the words "establishing a *prima facie* case" for the *Burdine* language of showing pretext to be harmless.[2]

---

unlike race or gender, is not an immutable characteristic, and . . . the realities of the workplace may demand that the replacement be experienced, thereby increasing the risk that the replacement might be over 40." *Id.* at 792 (citing *McCorstin v. United States Steel Corp.,* 621 F.2d 749, 753-54 (5th Cir. 1980)).

[2] We note that the language used by the Commission is the identical language that we cited with approval in *Montour.* The precise issue before us now was not the focus of our inquiry in *Montour.* While we are not persuaded that the language used by the Commission, when read in the context of the entire adjudication, does eliminate the *prima facie* burden, we believe it is advisable to parrot as closely as possible the *Burdine* language and would suggest that the Commission do so in the future.

Next, Employer asserts that the Commission committed legal error when it determined that Employer's reason for terminating Complainant was pretextual. Essentially, it contends that the Commission should have found Farber's testimony on why Complainant was terminated to be credible. Credibility matters and the weight to be afforded the evidence are, however, solely within the province of the Commission. *Albert Einstein Medical Center v. Pennsylvania Human Relations Commission,* 87 Pa. Commonwealth Ct. 145, 486 A.2d 575 (1985). Further, Employer argues that the reasons cited by the hearing examiner for finding pretext are "not relevant" (we disagree), and that the testimony of Employer's witnesses shows legitimate reasons for the discharge. This latter assertion, however, goes to the credibility and the inferences the Commission wishes to draw from the evidence. We find substantial evidence of record to support the Commission's determination that Employer's reasons for the termination action were pretextual and, hence, that determination must stand.

Finally, Employer argues that the Commission committed legal error in declining to allow Employer an offset for unemployment compensation benefits collected by Complainant. *Williamsburg Community School District v. Pennsylvania Human Relations Commissions,* 99 Pa. Commonwealth Ct. 206, 512 A.2d 1339 (1986) upheld a Commission order that declined to allow the employer an offset for unemployment compensation benefits collected by the employee. Employer seeks to distinguish *Williamsburg* by contending that in that case, unlike here, the employee was found to be entitled to front pay. We decline to read *Williamsburg* to hold that as a condition precedent to refusing an employer an offset for unemployment compensation benefits, there must be an award of front pay. Keeping in mind the remedial purposes of the Pennsylvania Human Rela-

tions Act,[3] *Allegheny Rehabilitation,* and the broad discretion the Commission has in fashioning remedies where unlawful discrimination is found, *see Williamsburg; Albert Einstein Medical Center,* we hold that the award here did not constitute legal error. *See also Craig v. Y & Y Snacks, Inc.,* 721 F.2d 77 (3d Cir. 1983) (adopting a non-deductibility rule for unemployment compensation benefits in ADEA cases) (following the Eleventh, Ninth, and Fourth Circuits).[4] We, however, decline to adopt a *per se* rule as the *Craig* court did, believing that such questions are best left to the agency's discretion.

Having determined that the Commission committed no legal error, we affirm its order.

ORDER

NOW, February 9, 1988, the order of the Pennsylvania Human Relations Commission in the above-captioned matter is hereby affirmed.

---

[3] Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§951-963.

[4] The *Craig* court premised its decision upon, *inter alia,* the notion that unemployment compensation benefits are collateral and the notion that disallowing the setoff would serve to discourage employers from implementing disscriminatory actions.