124 Pa. Commonwealth Ct. 518 (1989)
556 A.2d 933
Civil Service Commission of City of Pittsburgh, Petitioner
v.
Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Respondent.
No. 214 C.D. 1988.
Commonwealth Court of Pennsylvania.
Argued October 5, 1988.
March 31, 1989.
Argued October 5, 1988, before Judges CRAIG, DOYLE, BARRY, COLINS, PALLADINO, McGINLEY and SMITH.
*519 Joseph F. Quinn, Assistant City Solicitor, with him, D.R. Pellegrini, City Solicitor, for petitioner.
Theresa Homisak, with her, Elisabeth S. Shuster, Chief Counsel, for respondent.
OPINION BY JUDGE McGINLEY, March 31, 1989:
The Civil Service Commission of the City of Pittsburgh (City) appeals a decision of the Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission (HRC) awarding monetary relief to Perry DeMarco (Complainant) for lost wages pursuant to the Pennsylvania Human Relations Act (Act).[1]
In March of 1980 Complainant applied for a transfer from his job as a Public Service Enrollee[2] laborer-watchman for the City to a position of Laborer with the City. Because the City considered the new position to be "arduous, non-sedentary," Complainant was required to submit to a pre-employment medical examination. Complainant was advised that he did not meet the City's height and weight standards which had been adopted from the Metropolitan Standard Life Insurance Table. Complainant was advised that he would be allowed to transfer contingent upon his losing 37 pounds in 19 weeks, and he was placed on a weight reduction program which was designed to bring him within the required range. On August 19, 1980, Complainant was advised that he had failed to progress as required on the weight reduction program and he was suspended without pay. During his suspension, Claimant applied for and received unemployment compensation. On or about October 24, 1980, the City notified Complainant that as a result of a preliminary injunction issued by the Court of *520 Common Pleas of Allegheny County, the City had discontinued use of its height and weight standards, and that, consequently, Complainant could resume his employment.
Also in that month, on or about October 16, 1980, Complainant filed a complaint with the HRC alleging that the City had unlawfully regarded him as handicapped or disabled due to his obesity. After a public hearing,[3] the HRC found that the City had engaged in unlawful employment discrimination when it suspended Complainant without pay because of obesity. The HRC entered an order awarding Complainant back pay for the period during which he had been suspended, without an offset for the unemployment compensation which Complainant received.
The City raises two issues. First, the City contends that the HRC erred when it concluded that Complainant's condition constituted a non-job related handicap or disability within the meaning of the Act.[4] Second, assuming arguendo that this Court finds that the suspension constituted unlawful discrimination under the Act, the City contends that the HRC erred by not deducting from the back pay award the amount of money which Complainant received in unemployment compensation.
We may not disturb an order of the HRC unless its adjudication is in violation of constitutional rights, is not in accordance with the law or if necessary findings of fact are not supported by substantial evidence. Beaver Cemetery v. Human Relations Commission, 107 Pa. Commonwealth Ct. 190, 528 A.2d 282 (1987).
*521 The City sets forth three arguments in support of its contention that Complainant's condition did not constitute a non-job related handicap or disability. Firstly, the City contends that Complainant failed to establish, as part of his prima facie case, that he was a "handicapped or disabled person."[5] Noting that 16 Pa. Code §44.4(i) (A) defines a "handicapped or disabled person" as a person who "has a physical or mental impairment which substantially limits one or more major life activities," the City states that there was no evidence of record which would indicate that Complainant's condition impaired any major life activities.[6] To the contrary, the City contends that Complainant's testimony supports the opposite conclusion, i.e. that his condition represented no such impairment.[7] Furthermore, the City contends that Complainant's suspension due to obesity does not represent such an impairment, because a single rejection from employment does not constitute a limitation of a major life activity. The City thus concludes that Complainant failed to meet his burden to show that he "has a physical or mental impairment which substantially limits one or more major life activities."
The City has set forth a red herring. The City would have us believe that we are reviewing a decision by the HRC that Complainant has a "physical . . . impairment which substantially limits one or more major life activities," pursuant to 16 Pa. Code §44.4(i)(A). The City thus misstates the HRC's conclusion. The HRC determined *522 not that Complainant has such an impairment, but rather that Complainant "is regarded as having such an impairment" pursuant to 16 Pa. Code §44.4(i)(C). The regulations define the relevant phrases as follows:
(ii) As used in subparagraph (i) of this paragraph, the phrase:
(A) `physical or mental impairment' means a physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin, and endocrine or a mental or psychological disorder, such as mental illness, and specific learning disabilities.
(B) `major life activities' means functions such as . . . working.
. . . .
(D) `is regarded as having an impairment' means has a physical or mental impairment that does not substantially limit major life activities but that is treated by an employer or owner, operator, or provider of a public accommodation as constituting such a limitation; has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or has none of the impairments defined in subparagraph (i)(A) of this paragraph but is treated by an employer or owner, operator, or provider of a public accommodation as having such an impairment.
Thus, the issue now before us concerns whether or not the HRC correctly concluded that Complainant was "regarded as having an impairment" based on his having *523 been rejected from employment by the City. We are guided by our previous decision in Pennsylvania State Police v. Pennsylvania Human Relations Commission (Williams), 85 Pa. Commonwealth Ct. 621, 483 A.2d 1039 (1984) rev'd on other grounds, 512 Pa. 534, 517 A.2d 1253 (1986), in which we held that a single rejection from employment constituted an "impairment of a major life activity", such that the complainant "qualified" as a "handicapped or disabled" person.[8] In that case, the complainant had been rejected from employment as a State Police cadet due to the loss of his right kidney. The State Police contention was similar to the position of the City herein, to-wit, that the complainant was not a handicapped or disabled person because he testified that he believed that he could perform all of the duties and functions of a cadet and trooper, and because the State Police medical officer who examined the complainant testified that he did not consider the complainant to be suffering any disability. Citing Pennsylvania State Police v. Pennsylvania Human Relations Commission (Sweeting), 72 Pa. Commonwealth Ct. 520, 457 A.2d 584 (1983), we concluded that:
`[I]f an Employer rejects an applicant for medical reasons, that act under the Commission's regulations is an impairment, per se, of a major life activity, i.e. employment. The State Police medical officer testified and the Commission found that the complainant had been rejected because he had one kidney. Therefore the Commission's conclusion that the complainant was a handicapped or disabled person was proper.'
*524 Pennsylvania State Police (Williams), 85 Pa. Commonwealth Ct. at 627-28, 483 A.2d at 1042. (Citations and footnote excluded.) Applying the ruling in Williams to the factual scenario presently facing this Court, it is clear that Complainant has proven as part of his prima facie case that he "is regarded as having an impairment . . . that does not substantially limit major life activities but that is treated by an employer . . . as constituting such a limitation."
Secondly, the City contends that this Court has already determined that obesity does not constitute a physical impairment in this Court's opinion in Philadelphia Electric Company v. Pennsylvania Human Relations Commission, 68 Pa. Commonwealth Ct. 212, 448 A.2d 701 (1982). Although this Court found in PECO that obesity was not a handicap or disability, the holding therein is distinguishable. This Court concluded that the complainant, who suffered from obesity, did not have a "physical or mental impairment which substantially limits one or more major life activities."[9] We were not presented with, and did not address, the question concerning whether or not an obese person may be handicapped or disabled by virtue of being "regarded as having such an impairment" pursuant to Pa. Code §44.4(i)(C), which is the basis of the Court's decision today.
Thirdly, the City asks us to conclude that a complainant's voluntary physical condition may not constitute a handicap or disability, and asks us to place upon a complainant the burden to prove that a physical condition is not voluntary. We are not persuaded that the legislature intended thusly to limit the scope of the Act. The HRC *525 found that the Complainant was regarded as having a physical impairment, and, be it a voluntary condition or not, he was discriminated against as a result thereof. That is the only showing which the Act requires.
Having determined that the HRC correctly concluded that the City unlawfully discriminated against Complainant, we must determine whether or not the HRC committed an error of law or an abuse of discretion by not deducting from the back pay award the amount of money which the Complainant received as unemployment compensation benefits. The HRC is given wide discretion in fashioning remedies where unlawful discrimination has been proven. The reason that the HRC has been given such discretion is that the back pay award serves the dual purpose of discouraging discrimination and of restoring the injured party to his or her pre-injury status. Williamsburg Community School District v. Pennsylvania Human Relations Commission, 99 Pa. Commonwealth Ct. 206, 512 A.2d 1339 (1986).
The City contends that the HRC abused its discretion by failing to offset the back pay award by the amount of unemployment compensation which Complainant received, alleging that under the facts of this case, the HRC's decision to disallow an offset does not further the goal of either discouraging future discrimination or restoring Complainant to his pre-injury status. The City states that the award does not discourage future discrimination because, the City already having foresworn use of the height-weight standards, there is no future discrimination to discourage. Furthermore, the City contends that the decision not to permit an offset does not merely return Complainant to his pre-injury status, but that it in fact grants him a windfall.
As to the City's first point, we note that a back pay award may serve to discourage other types of future *526 discrimination and not merely discrimination based on the height and weight standards. In response to the City's second argument, we note that we rejected a similar argument in Orweco Frocks, Inc. v. Pennsylvania Human Relations Commission, 113 Pa. Commonwealth Ct. 333, 537 A.2d 897 (1988). The employer therein sought to distinguish the facts of that case from Williamsburg. In Williamsburg this Court held that a decision to disallow an offset for unemployment compensation did not constitute a windfall and was not in error because the complainant was not awarded front pay which he was entitled to receive.[10] The employer in Orweco Frocks argued that the decision to disallow an offset would constitute a windfall because, unlike the complainant in Williamsburg, the complainant in Orweco Frocks was not entitled to front pay. We rejected that argument, stating that:
Employer seeks to distinguish Williamsburg by contending that in that case, unlike here, the employee was found to be entitled to front pay. We decline to read Williamsburg to hold that as a condition precedent to refusing an employer an offset for unemployment compensation benefits, there must be an award of front pay. Keeping in mind the remedial purposes of the Pennsylvania Human Relations Act, . . . and the broad discretion the Commission has in fashioning remedies where unlawful discrimination is found, . . . we hold that the award here did not constitute legal error. See also Craig v. Y & Y Snacks, Inc., 721 F.2d 77 (3d Cir. 1983) (adopting a non-deductibility *527 rule for unemployment compensation benefits in ADEA cases) (following the Eleventh, Ninth, and Fourth Circuits). We, however, decline to adopt a per se rule as the Craig court did, believing that such questions are best left to the agency's discretion.
Orweco Frocks, 113 Pa. Commonwealth Ct. at 343-44, 537 A.2d at 903 (citations omitted). Following our holding in Orweco Frocks, we determined that the decision by the HRC to disallow an offset based on unemployment compensation did not constitute an error of law or abuse of discretion.
The decision of the HRC is affirmed.

ORDER
AND NOW, this 31st day of March, 1989, the decision of the Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission in the above-captioned matter is affirmed.
DISSENTING OPINION BY JUDGE PALLADINO:
I dissent. I disagree with the majority's holding that there was unlawful discrimination against Complainant.
A prima facie case of discrimination under section 5(a) of the Pennsylvania Human Relations Act (PHRA), Act of October 27, 1955. P.L. 744, as amended, 43 P.S. §955(a),[1] is established by proving that the complainant *528 is a member of a protected class, has suffered adverse employment action, and that others not in the class have been treated differently. Burns International Security Services, Inc. v. Pennsylvania Human Relations Commission, 119 Pa. Commonwealth Ct. 418, 547 A.2d 818 (1988). Thus, Complainant in this case must initially show that he is a member of a protected class, i.e. that he is a handicapped or disabled person within the meaning of the PHRA.
Pursuant to the PHRA, the Pennsylvania Human Relations Commission (HRC) has promulgated regulations which define handicapped or disabled person to include a person who "has a physical or mental impairment which substantially limits one or more major life activities" or "is regarded as having such an impairment." 16 Pa. Code §44.4 (i)(A), (C). The HRC has defined the phrase "is regarded as having an impairment" as one who "has a physical or mental impairment that does not substantially limit major life activities but that is treated by an employer . . . as constituting such a limitation. . . ." 16 Pa. Code §44.4(ii)(D).
Accordingly, the first element which Complainant must establish is that he has a "physical or mental impairment" within the meaning of the HRC regulations, even if he attempts to come within the purview of the "is regarded as having" section.
The HRC has defined "physical or mental impairment" as follows:
[A] physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin, and endocrine or a mental or *529 psychological disorder, such as mental illness, and specific learning disabilities.
16 Pa. Code §44.4(ii)(A).
Given this definition and the evidence presented in this case, I conclude that Complainant has failed to establish that his excess weight constitutes a "physical impairment." Complainant testified that he did not have difficulty breathing, pulmonary problems, lung disease, high blood pressure, diabetes, or thyroid condition. Hearing of December 12, 1986, Notes of Testimony at 20-22. While Complainant may have been overweight, his own testimony clearly establishes that his weight had no effect on any of the body systems enumerated in 16 Pa. Code §44.4(ii)(A). Therefore, I would hold that Complainant does not have a physical impairment under the regulations and is not handicapped under the PHRA.
I believe that the HRC erred in determining that unlawful discrimination by the City against Complainant has been shown. Even assuming the correctness of this determination, I also would find that the HRC abused its discretion in failing to deduct from Complainant's back pay award the amount which he received in unemployment compensation benefits.
As the majority notes, the HRC is given wide discretion in fashioning remedies where unlawful discrimination has been proven. Williamsburg Community School District v. Pennsylvania Human Relations Commission, 99 Pa. Commonwealth Ct. 206, 512 A.2d 1339 (1986). A back pay award rendered by the HRC may serve to discourage discrimination and to restore the injured party to his pre-injury status. Id. The majority in the instant case has concluded that the HRC's refusal to allow the City an offset for the unemployment compensation benefits which Complainant received furthers both of these purposes. I disagree.
*530 In this case, the HRC specifically found that the City suspended its height and weight requirements on October 24, 1980. Finding of Fact No. 9. By letter dated October 24, 1980, Complainant was notified that he could resume his employment, which he did. The HRC's final order was not issued until December 3, 1987, over seven (7) years after the City discontinued its use of the height and weight standards. Accordingly, given the facts of this case, I conclude that the HRC's refusal to allow the City an offset for the unemployment compensation which Complainant received does not further the goal of discouraging future discrimination.[2]
As stated above, a back pay award is also intended to restore the injured party to his pre-injury status. In Williamsburg, this court considered the issue of whether the HRC committed an error of law or abused its discretion when it refused to deduct unemployment compensation benefits from a back pay award. The HRC determined that the complainant in Williamsburg did not receive a "windfall" because it [the HRC] did not award front pay which the complainant had requested and could have lawfully received. We affirmed the decision of the HRC, concluding that, on those facts, it was not required to offset the unemployment compensation benefits.
In contrast to Williamsburg, the Complainant in the instant case has not alleged that he is entitled to front pay. Further, the parties stipulated as to the amount of Complainant's lost wages.[3] I believe that the HRC's *531 failure to allow the City an offset does more than simply return Complainant to his pre-injury status. Thus, I conclude that the HRC's refusal to deduct the unemployment compensation benefits from Complainant's back pay award serves neither of the stated purposes of such an award.
I would reverse the HRC's decision.
NOTES
[1] Act of October 27, 1955, P.L. 744, as amended, 43 P.S. §§951-964.
[2] The PSE position was federally funded.
[3] For reasons not apparent in the record the hearing was not held until December, 1986, and the final order was issued one year later.
[4] Act of October 27, 1955, P.L. 744, as amended, 43 P.S. §§951-964.
[5] Establishment of a prima facie case requires, inter alia, a showing that a complainant is "handicapped or disabled" under the Act. General Electric Corp. v. Human Relations Commission, 469 Pa. 292, 365 A.2d 649 (1976).
[6] "Major life activity" is defined as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 16 Pa. Code §44.4(ii)(B).
[7] Notes of Testimony, December 12, 1986, (N.T.) at 22-23.
[8] The City's suggestion that the question whether or not a single rejection from employment may constitute an "impairment of a major life activity" is a matter of first impression is clearly incorrect.
[9] Although the definition of "handicapped or disabled person" in Pa. Code §44.4(i)(A) was adopted only after the proceedings in PECO had commenced, and was therefore not binding, we relied upon the definition contained therein as being "reflect[ive] [of] the common and approved usage of the terms at issue." Id. at 223, 488 A.2d at 706.
[10] The inference was, presumably, that the loss of the front pay cancelled out any extra funds the complainant may have received by the disallowance of the offset.
[1] Section 5(a) provides that it shall be an unlawful discriminatory practice for an employer to discriminate against an individual with respect to terms and conditions of employment on the basis of a non-job related handicap or disability, unless based upon a bona fide occupational qualification, if that individual is the best and most competent to perform the services required. 43 P.S. §955(a). Section 4(p) of the PHRA defines "non-job related handicap" as "any handicap or disability which does not substantially interfere with the ability to perform essential functions of employment. . . . 43 P.S. §954(p).
[2] The majority states that the HRC award may serve to discourage other types of future discrimination, and not merely discrimination based upon height and weight. However, I believe that reference to other kinds of future discrimination which the City might engage in is unduly speculative and should not be used as justification for the HRC's refusal to allow an offset.
[3] Complainant's lost wages totalled $2,241.12. The HRC awarded interest on this amount at the rate of six (6%) percent for the years 1980-1986. The parties also stipulated that Complainant received $1,043.00 in unemployment compensation benefits during the period of his suspension from his job.