Slippery Rock State College and Albert A. Watrel, President, Appellants, *v.* Pennsylvania Human Relations Commission, Appellee.

Argued December 3, 1973, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*Edward A. Miller,* Assistant Attorney General, for appellants.

*Mark A. Senick,* Assistant General Counsel, for appellee.

OPINION BY JUDGE WILKINSON, January 7, 1974:

This is an appeal from an order of the Pennsylvania Human Relations Commission directing appellants to offer Dolores Barracano Schmidt, complainant, a contract of employment as a full-time assistant professor as of the 1971-1972 academic year; permit complainant to fulfill any contractual obligations she might have at another institution before she returns; pay her full salary beginning with the 1971-1972 academic year, less any salary paid by appellants or others during that period; pay interest on the sum determined to be due beginning 30 days from the date of the order; and to cease and desist from discriminating in hire, tenure, promotions, and any other incidents of employment in any manner whatsoever against any persons.

The Commission based its order on a determination that appellants committed an unlawful discriminatory practice in violation of Section 5(a) of the Pennsylvania Human Relations Act, Act of October 27, 1955, P. L. 744, as amended, 43 P.S. §955(a), in that they failed to hire complainant at the rank of full-time assistant professor for the 1971-1972 academic year, and failed to renew her contract for the 1972-1973 academic year because of her sex.

Appellants base their appeal on two grounds: first, the record does not contain substantial evidence to support the Commission's decision; and, second, the Commission exceeded its authority. We must sustain appellants' first ground and reverse the Commission.

Complainant was hired in the English Department at Slippery Rock State College in 1968 as a part-time

faculty member. At that time, and indeed since 1960, complainant had fulfilled all the requirements for her doctorate in English except writing[1] and defending her dissertation. This is the critical "hard fact" in the record. It is clear from the entire record—claimant's testimony, Dean Schmittlein's testimony, and the exhihibts —that before the complainant could reasonably expect to obtain permanent full-time status in the English Department of Slippery Rock State College, she should complete the requirements of her doctorate. Indeed, to quote from Commission's Exhibit "A," a letter from Dean Schmittlein, dated September 10, 1971: *"I would, however, suggest that before you request full-time employment, you very carefully consider the work necessary for the successful completion of your terminal degree.* I believe the work on Dreiser deserves to be completed. *If you aspire to be a full-time faculty member, particularly with equal opportunity and recognition, you will wish to compete on an equal basis and this necessitates the successful completion of your degree."* (Emphasis supplied.) To quote from Commission's Exhibit "B," a letter from the Vice-President for Academic Affairs, dated November 1, 1971: "Your last application for employment leads me to believe that the completion of your Ph.D degree was imminent. Since we were led to believe at the time of your employment that you would be completing your degree, it would seem reasonable that you should complete this degree in the immediate future. In the meantime, I cannot guarantee your continued employment, let alone full-time employment under the current conditions of austerity, coupled with the availability of many competent people with terminal degrees in your area." Again from Com-

---

[1] At one point in complainant's testimony, she stated that she had not completed her dissertation and did not intend to do so. Later she said it was written but denied that she ever said she intended to submit it.

mission's Exhibit "C," a letter from the Chairman of the Department of English, dated January 20, 1972: "Any persons we will consider hiring for full-time positions will be ones who already hold the doctorate degree. As to your request concerning full-time employment in the department, all conversations I have had with the administration on this matter lead me to believe that this would not be possible so long as you have not completed work on your terminal degree." Thus, as indicated from the Commission's Exhibits, as well as from the Dean's testimony, it is clear to us that the English Department was led to believe that complainant would complete her doctorate requirements promptly before she would obtain full-time status.

It is equally clear that it was the policy of the English Department, in order to upgrade the Department, to require a doctorate degree of new full-time employees. Indeed, the Commission so found in Finding of Fact 24: "In August, 1971, the *English Department,* as well as other Departments in the College of Arts and Humanities, determined to upgrade its *full-time faculty* by hiring only persons who held terminal degrees in their field." (Emphasis supplied.) Nevertheless, complainant testified clearly and affirmatively that she would not say she planned to complete the requirements of the doctorate.

Appellee appears to rest its case on two grounds: first, that Slippery Rock State College did not have a requirement that an otherwise qualified applicant for a full-time faculty position have a doctorate and, second, such a policy in the English Department was a mere screen behind which to hide its sex discrimination against women. The Commission found as a fact to the contrary—in 1972-73, five people were hired for full-time positions in the English Department, four with doctorates, two of whom were women. The fifth person was a man who was hired, according to the explanation

of Dean Schmittlein, because of his unusual qualifications, and because the award of the doctorate was imminent. The Dean testified further that that individual was hired with the stipulation that his doctorate be awarded within the year.

There is no difference of opinion on the law applicable to this case. The Commission's order must be affirmed if it is in accordance with law and if there is substantial evidence to support it. *Goodman Appeal,* 425 Pa. 23, 227 A. 2d 816 (1967), *Chester Housing Authority v. Human Relations Commission,* 9 Pa. Commonwealth Ct. 415, 305 A. 2d 751 (1973). If there is no substantial evidence to support it, the order must be reversed. *St. Andrews Development Co., Inc. v. Pennsylvania Human Relations Commission,* 10 Pa. Commonwealth Ct. 123, 308 A. 2d 623 (1973); *Pennsylvania Human Relations Commission v. Altman,* 42 Pa. D. & C. 2d 317 (1967).

We have read and reread this record and can find no substantial evidence that there was sex discrimination in the failure of the appellants to renew complainant's part-time contract or to give her a full-time contract. We are not unmindful that there is great difficulty in obtaining affirmative, positive evidence of discrimination based on sex or other improper considerations. In most instances, conduct and action must necessarily be relied upon. However, when those individuals responsible for the decisions testify, put their reasons in writing to the complainant, and make themselves available for cross-examination, as was done here, and when the basis given for these decisions is reasonable and proper and communicated to the complainant prior to and at the time the decisions were being made, in the absence of evidence that the explanations are fabricated, they cannot be disregarded. Reasonable minds may differ as to whether the Department of English at Slippery Rock State College should have a poli-

cy requiring an otherwise qualified teacher to have a doctorate as a condition to full-time employment, when other departments in the College do not have such a requirement. Nevertheless, establishment of such policy is the prerogative of the Board of State College and University Directors, the Board of Trustees of Slippery Rock State College, and its President. *See* Act of February 17, 1970, P. L. 24, 24 P.S. §20-2001 et seq. Of course, such policies and their applications must not violate the mandates of the Pennsylvania Human Relations Act; there is no evidence here that they do.

It is significant that, although there are 31 Findings of Fact, there is no Finding of Fact that appellants engaged in sex discrimination. There is a Conclusion of Law to this effect, but there is no Finding of Fact on which it can be based.

As to the second reason relied upon by appellants, i.e., that the Board has exceeded its authority, appellants' reasoning is not clear and appears to be repetitious of its first reason. Certainly the Commission would have authority to enter a proper order in this case if there was substantial evidence to support it. However, whether the order in this case, assuming there was substantial evidence to support it, is overly broad, was not argued and need not be decided.

Accordingly, we enter the following

### ORDER

Now, January 7, 1974, the order of the Pennsylvania Human Relations Commission, dated February 26, 1973, is reversed and the complaint, dated February 29, 1972, and the amended complaint, dated May 2, 1972, are dismissed.