Ruth H. Kovich, Appellant *v.* Mansfield State College et al., Appellees.

Argued April 4, 1984, before Judges ROGERS, CRAIG and BARRY, sitting as a panel of three.

*Louise O. Knight, Clement and Knight,* for appellant.

*Wayne M. Richardson,* Regional Legal Counsel, for appellees.

OPINION BY JUDGE BARRY, July 24, 1984:

This appeal follows an order of the Tioga County Court of Common Pleas which ruled in favor of Mansfield State College, et al., (the College) in a sex discrimination suit brought by Ruth H. Kovich. She appeals under Section 5 of the Pennsylvania Human Relations Act (Act), Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §955.

Mrs. Kovich was a member of the faculty of the Department of Home Economics of the College from September 1966 to May 1969. She was awarded tenure February 24, 1969, effective in the 1969-70 academic

year. Mrs. Kovich resigned her position May 23, 1969, in order to accompany her husband, John Kovich, a member of the faculty of the Department of Special Education, who had been awarded sabbatical leave to pursue graduate studies for the 1969-70 academic year at Lehigh University in Bethlehem, Pa. The Kovichs returned to Mansfield, Pa., at the end of the 1969-70 academic year.

Mrs. Kovich applied for and received a temporary appointment for the spring semester for the 1970-71 academic year in the home economics department. She applied for and received a full-time temporary appointment in the same department for the 1971-72 academic year for the spring semester. Mrs. Kovich again applied for and received a temporary full-time appointment for the entire academic year 1973-74.

On November 12, 1973, Mrs. Kovich applied for a permanent full-time position teaching home economics in the Department of Education. The College intended to fill the position for the spring semester 1974. Mrs. Kovich, however, was not awarded the position. She was unsuccessful because the College, as advertised, expressed a preference for candidates who held doctoral degrees. The successful candidate held a doctorate in home economics education whereas Mrs. Kovich held a master's degree and many additional credit hours but not a doctoral degree.

On April 2, 1974, Mrs. Kovich applied for a permanent position in home economics education for the 1974-75 academic year. The College, subsequently, reclassified the position from permanent to temporary status. Mrs. Kovich applied for this position after it was reclassified. She, however, was not the successful candidate. The College, as advertised, expressed a preference for a candidate with a doctoral degree or a candidate close to the completion of doctoral work.

The College awarded the position to an individual who was a doctoral candidate at the time of her employment. Mrs. Kovich had no credits toward a doctor's degree.

She applied for and received a temporary, part-time appointment for the spring semester of the 1974-75 academic year. She made no application either for temporary or permanent employment in the Department of Home Economics of the College after the temporary, part-time appointment in the spring semester of 1975.

At the trial court hearing, Mrs. Kovich claimed that an "anti-nepotism" policy against employment of husbands and wives existed at the College. She based this claim, in part, on a memo issued May 27, 1969, by then College president, Lawrence Park. The memo concerned all aspects of the faculty hiring process including the contents of employment applicant vita files and scheduling of applicant interviews. It read, in part:

In general, I hope we can recruit from a broad spectrum of institutions. Graduates of our own college should not be considered unless they are clearly outstanding and have had significant experience and education outside Pennsylvania. *I hope, too, that we will have fewer husband/ wife appointments. Exceptions are possible when the fields are different and the fields are difficult to recruit.* (Emphasis added.)

The trial court found the College had not implemented a policy whereby a husband or wife of a teacher would not be eligible for employment. It concluded that an anti-nepotism policy based on marital status is not discriminatory per se and that Mrs. Kovich failed to meet her burden of proof that the policy of the College was discrimination based on sex. Subsequently, Mrs. Kovich appealed to this Court.

Section 5 of the Act provides:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification . . .

For any employer because of the . . . sex, . . . of any individual to refuse to hire or employ, or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is the best able and most competent to perform the services required.

43 P.S. §955. We must determine whether a preponderance of the evidence presented by Mrs. Kovich indicates that she has been discriminated against because of her sex. We do not believe she has met this burden.

The thrust of Mrs. Kovich's argument is that the College adopted an "anti-nepotism" policy which violated the Act and discriminated against her when she sought permanent employment at the College. The policy's effect, she states, is to deny employment to the wife and not to the husband.

In our view, the College did not adopt an anti-nepotism policy. Mrs. Kovich had been hired on a temporary basis which reveals, at least, that if this policy existed, it was not applied to her regarding those positions. In any event, her application was accepted for permanent positions by the Home Economics Department chairman despite the fact the college had advertised and preferred a person with a doctoral degree or credits toward a doctor's degree. Although Mrs. Kovich thought she was qualified, the College demonstrated reasons why it desired an individual

with a doctoral degree. Educational institutions may impose certain requirements in order to maintain their accreditation. We, indeed, have recognized this premise in *Slippery Rock State College v. Pennsylvania Human Relations Commission*, 11 Pa. Commonwealth Ct. 501, 314 A.2d 344 (1974), where we stated that a state college board of directors, trustees, and its president have the prerogative to establish a policy which requires an otherwise qualified teacher to have a doctoral degree. The requirements placed on applicants were not discriminatory and Mrs. Kovich was actually denied employment in permanent positions because of her lack of qualifications.

Assuming, arguendo, that an anti-nepotism policy did exist, Mrs. Kovich failed to meet her burden of proving discrimination. To prove a prima facie case of discrimination one must show that she is a member of a protected class and had applied for a job for which she is qualified; that her application was refused and the employer continued to seek other applicants of equal qualifications. Once this burden is met, it shifts to the employer to demonstrate that the applicant was not the best qualified. *Blackburn v. Pennsylvania Human Relations Commission*, 62 Pa. Commonwealth Ct. 171, 435 A.2d 671 (1981). In the instant case, the burden does not shift because Mrs. Kovich applied for a job for which she did not meet the required qualifications and the College continued to seek applicants who did meet the qualifications. Even if she had met her burden of proving a prima facie case of discrimination, the College could have demonstrated that she was not the most able and most competent candidate for the position. *Luzerne County Community College v. Pennsylvania Human Relations Commission*, 33 Pa. Commonwealth Ct. 121, 381 A.2d 201 (1977).

Mrs. Kovich also argued that the hiring policy, although neutral on its face, had a discriminatory effect. She contends that a prima facie case can be proved by demonstrating a significant discriminatory pattern which results in a disproportionate impact. Mrs. Kovich alleges that she had a continuous application for employment for the years 1970 to 1975, that she qualified for a permanent position by virtue of her prior service as a tenured faculty member, that she was given only temporary positions during the years 1970 to 1975, that she believed she was the best qualified for every permanent position for which she applied, and that the College took few applications for permanent faculty positions from the wives of male faculty members after 1969. Even if the evidence supports these contentions, a disproportionate impact to members of a protected class has not been demonstrated. Rather, Mrs. Kovich had to demonstrate that there were applicants who were spouses of the College's faculty membership and the female applicants were disproportionately denied employment as compared to the male members. This pattern has not been demonstrated by Mrs. Kovich.

Finally, Mrs. Kovich argues that the trial court erred when it refused the admission into evidence of a memorandum sent by the home economics department chairman to her. She asserts that the memorandum confirmed the existence of an anti-nepotism policy at the College. She claims that the memorandum was properly authenticated and should have been admitted. We disagree. For the memorandum to be admitted, a qualified witness should have testified to its identity and mode of preparation. Mrs. Kovich failed to show that the maker of the memorandum was unavailable to testify in some manner. Had the memorandum been admitted into evidence, the College would have been

denied the opportunity to cross-examine the maker of the memorandum regarding its contents.

For the foregoing reasons, we affirm the order of the trial court.

ORDER

Now, July 24, 1984, the order of the Court of Common Pleas of Tioga County, dated December 21, 1982, at No. 1480 C. D. 1977, is affirmed.