Erin Jackson,                           :
             Petitioner            :
                                  :
        v.                           :
                                  :
Pennsylvania Human            :
Relations Commission,         :   No. 46 C.D. 2023
             Respondent      :   Argued:  December 4, 2023

BEFORE:   HONORABLE ANNE E. COVEY, Judge
                 HONORABLE STACY WALLACE, Judge
                 HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION BY
JUDGE COVEY                               FILED:  January 5, 2024

Erin Jackson (Petitioner) petitions this Court for review of the Pennsylvania Human Relations Commission's (PHRC) December 19, 2022 Final Order. Petitioner presents three issues for this Court's review: (1) whether the record evidence established the existence of a *prima facie* case of failure to grant a reasonable accommodation; (2) whether the requested accommodation imposed an undue hardship upon Petitioner, such that granting it would be unreasonable; and (3) whether the record evidence established the existence of a *prima facie* case of retaliation. After review, this Court affirms.

## Background[1]

On February 1, 2019, Lainey Scheller (Scheller) and her husband signed a month-to-month lease (Lease) with Petitioner and her husband, Darnell Jackson, to rent an apartment located at 104 Spring Street, Galeton, Pennsylvania (Property), which is adjacent to Petitioner's main residence. Scheller, her husband,

---

[1] The facts are as found by the Hearing Examiner.

and their two children moved into the Property in February 2019. The rent was $550.00 per month. The Lease specified that either party could terminate the Lease by providing 30 days written notice. Petitioner and her husband permitted Scheller's dog, Violet, to move into the Property.

Scheller was diagnosed with a disability, Post Traumatic Stress Disorder (PTSD), prior to moving into the Property. Violet was Scheller's emotional support animal (ESA). From February 2019, until June 2019, Scheller and Petitioner were friends. On June 3, 2019, Violet died. On June 4, 2019, Scheller texted Petitioner about getting a new dog; specifically, a puppy. That same day, Petitioner responded that she and her husband would not allow a puppy in the Property because the carpet was newer, and they were worried about a puppy causing damage. Scheller responded by asking whether Petitioner and her husband would allow a puppy if she agreed to sign a contract to replace the carpet if it got damaged. Petitioner responded that the parties could discuss it further when Petitioner and her husband returned from vacation, but they would not allow a puppy at the Property.

When Petitioner and her husband returned from vacation on June 6, 2019, Scheller and Petitioner discussed Scheller getting a puppy. That same day, Scheller presented Petitioner with a June 5, 2019 letter from her health care provider (Doctor's Note) explaining that the puppy was an ESA to help alleviate Petitioner's PTSD symptoms. On June 8, 2019, Scheller went to Petitioner's house to again discuss the possibility of getting a puppy. After the discussion, Petitioner immediately requested that her husband come home. When her husband arrived, he called 911. When Galeton Borough Police Chief Christian J. Brackman (Officer Brackman) arrived at Petitioner's house, Scheller was no longer there. Petitioner did not know where Scheller was when Petitioner's husband called 911. Thereafter, Petitioner put up no trespassing signs on Petitioner's property. Petitioner had her lawyer send Scheller a notice to quit, which was dated June 11, 2019. Scheller

2

moved out of the Property on June 14, 2019. Scheller paid $88.91 for a U-Haul, and $500.00 cash to movers who helped her move. The rent for Scheller's next apartment was $801.00 per month.

**Facts**

On or about July 15, 2019, Scheller filed a Complaint against Petitioner with the PHRC. Therein, Scheller alleged that Petitioner failed to accommodate Scheller's alleged disability, PTSD, and retaliated against Scheller because of her alleged disability. The Complaint was served upon Petitioner on August 7, 2019. On or about August 19, 2019, Petitioner filed an Answer to the Complaint. On September 17, 2021, following an investigation, the PHRC approved probable cause findings. The PHRC and the parties attempted to resolve the case through conciliation; however, Petitioner refused to attend conciliation. Thereafter, the PHRC approved the case for a public hearing. The parties waived their right to an in-person hearing and the Hearing Examiner held a virtual hearing on May 27, 2022. The parties submitted post-hearing briefs in August 2022.

On September 2, 2022, the Hearing Examiner determined that Petitioner had unlawfully discriminated against Scheller by denying her an accommodation for her disability, and retaliating against Scheller because of her disability in violation of Section 5(a) of the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 955(a) (relating to unlawful discriminatory practices).[2] The Hearing Examiner recommended that the PHRC approve and adopt her proposed findings of fact, conclusions of law, and opinion. The Hearing Examiner further recommended a proposed final order. On December 19, 2022, the PHRC issued the Final Order approving and adopting the Hearing Examiner's proposed findings of

_____

[2] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951-963.

fact, conclusions of law, opinion, and final order directing that Petitioner: (1) cease and desist from discriminating against anyone who requests a reasonable accommodation under the PHRA; (2) cease and desist from retaliating against anyone who engages in protected activity under the PHRA; (3) pay Scheller's reasonable, out-of-pocket expenses of $1,338.91 within 30 days; (4) pay Scheller $5,000.00 in compensatory damages for Scheller's embarrassment and humiliation directly attributable to Petitioner's discriminatory and retaliatory actions within 30 days; and (5) pay the Commonwealth $3,000.00 as a civil penalty pursuant to Section 9(f)(2)(i) of the PHRA within 30 days.[3] Petitioner appealed to this Court.[4]

## Discussion

Initially, Section 5(h)(3.2) of the PHRA provides that it shall be an unlawful discriminatory practice for any person to "[r]efuse to make reasonable accommodations in rules, policies, practices[,] or services when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a housing accommodation." 43 P.S. § 955(h)(3.2). Section 45.5(b) of the PHRC's Regulations similarly states, in relevant part:

> A person may not deny a person with a handicap or disability the opportunity to use, enjoy or benefit from housing accommodations or commercial property subject

---

[3] 43 P.S. § 959(f)(2)(i) (relating to civil penalties).

[4] "Our scope of review . . . is limited to a determination of whether constitutional rights have been violated, whether necessary findings of fact are supported by substantial competent evidence[,] or whether the [PHRC] has made an error of law." [Pa.] *State Police v.* [Pa.] *Hum*[.] [*Rels.*] *Comm*[*'n*], . . . 583 A.2d 50, 52 ([Pa. Cmwlth.] 1990) (citation omitted). The [PHRC] is the sole judge of witness credibility and evidentiary weight. *Id.*

*Canal Side Care Manor, LLC v. Pa. Hum. Rels. Comm'n*, 30 A.3d 568, 574 (Pa. Cmwlth. 2011).

4

to the coverage of the [PHRA] if the basis of the denial is the need for reasonable accommodations.

(1) A person may not refuse to make reasonable accommodations in rules, policies, practices[,] and procedures when the accommodations may be necessary to afford a person with a handicap or disability equal opportunity to use and enjoy a dwelling unit, including public and common use areas.

16 Pa. Code § 45.5(b).

Petitioner first argues that the record evidence failed to establish the existence of a *prima facie* case of failure to grant a reasonable accommodation. Specifically, Petitioner contends that Scheller never disclosed a disability or made any request for an accommodation, and that Scheller failed to provide any evidence that a puppy would serve a disability related purpose.

However, Scheller testified:

Q. Okay. And did you give [Petitioner] anything at that time?

A. Yes, my document.

Q. And can you tell me what document you're talking about?

A. An ESA letter for [an] emotional support animal.

. . . .

Q. Okay. Is this - can you see the document, [] Scheller?

A. Yes, ma'am, I can.

Q. Okay. And is this the [Doctor's N]ote that you're talking about that you gave to [Petitioner] on the 6th?

A. Yes, ma'am, it is.

Q. Okay. And this is a [D]octor's [N]ote. Can you tell me who your doctor is who wrote this?

A. Tom Sousa.

Q. And is he your doctor?

A. He was my doctor during this time, yes.

5

Q. Okay. And what's the date on your [D]octor's [N]ote?

A. June 5th of 2019.

Q. And what possessed you to get a [D]octor's [N]ote for your ESA?

A. In the situation [] I was put in, I needed to go and have my [D]octor's [N]ote in order to have an [ESA].

Q. So the reason that it's dated the 5th is because you were aware that [Petitioner] did not want to allow you to have your - a new [ESA]. Is that correct?

A. Yes.

Q. Okay. And can you tell - and I'm sorry. Could you tell us again when you gave it to [Petitioner]?

A. On the 6th of June.

Reproduced Record (R.R.) at 24a-26a.

The Doctor's Note stated:

To Whom It May Concern[:]

. . . Scheller is currently my patient at Butler VA Healthcare and I have been treating her for [PTSD] since November 13, 2018. I am intimately aware of her history and functional restrictions by his/her mental condition. She meets the definition of disabled under the Americans with Disabilities Act,[5] the Rehabilitation Act of 1973,[6] and the Fair Housing Act.[7]

As a result of mental illness, [Scheller] has certain limitations related to anxiety, depression[,] and distress tolerance. In order to assist in alleviating these difficulties and improve her quality of life while using the dwelling unit you own and/or manage, I am prescribing an [ESA] that will help [] Scheller in dealing with her disability better.

---

[5] 42 U.S.C. §§ 12101-12213.
[6] 29 U.S.C. §§ 720-796.
[7] 42 U.S.C. §§ 3601-3631.

> There exists a considerable amount of academic research that endorses the therapeutic benefits of [ESAs] for individuals with mental disabilities, such as that [sic] faced by [Scheller]. Upon request, I will provide the relevant studies and would be more than willing to answer any questions that you may have regarding my recommendation. Should you have any further questions, please do not hesitate to get in touch with me.

R.R. at 203a.[8]

> Scheller further related:

> Q. Okay. What did [Petitioner] say after you gave her the [Doctor's N]ote? Did she read it in front of you?

> A. Yes. She asked what it was, looked at it, and said that I still couldn't have a puppy.

> Q. And then tell us what happened next.

> A. We went our separate ways right after that one.

R.R. at 26a.

As to whether Scheller disclosed a disability or made any request for an accommodation, the Hearing Examiner concluded:

> Regarding the second element of the *prima facie* case, [Petitioner] disputes that she knew of Scheller's disability. However, [Petitioner's] testimony was not credible on this issue. [Petitioner] testified that Scheller never gave her the [D]octor's [N]ote[,] but may have given it to [Petitioner's] husband. [Petitioner] further testified that she never read the [Doctor's Note] and that Scheller never explained the contents of the [Doctor's Note]. [Petitioner's] testimony was directly contradicted by Officer [] Brackman who was called to [Petitioner's residence] on June 8, 2019.[9] Officer Brackman testified that he created a summary report of the incident. . . . According to Officer Brackman's testimony, [] Scheller went to [Petitioner's residence] and told [Petitioner] that there were federal laws that they could not refuse her getting a puppy for her PTSD. [] Scheller attempted to give [Petitioner] the paper

---

[8] The Hearing Examiner accepted the Doctor's Note into evidence. *See* R.R. at 24a.
[9] *See* R.R. at 141a-149a (Officer Brackman's testimony).

7

explaining the guidelines that dealt with the PTSD in-service dog. When asked who told him that information, Officer Brackman testified that [Petitioner] told him. Based upon Officer Brackman's testimony, it's clear that [Petitioner] knew about Scheller's disability.

Officer Brackman's testimony also shows that Scheller requested a reasonable accommodation of being allowed to have a puppy serve as her [ESA]. Scheller informed [Petitioner] of her disability verbally and provided a letter from a social worker who was treating Scheller for her PTSD at the time.

Hearing Examiner Op. at 9 (italics added; internal citations omitted).

Relative to whether Scheller provided any evidence that a puppy would serve a disability related purpose, the Hearing Examiner explained:

To satisfy the fourth element of the *prima facie* case, Scheller must show that the [ESA] may be necessary to afford her an equal opportunity to use and enjoy the dwelling. Here[,] Scheller testified credibly that Violet, the dog that she had when she initially moved into the [P]roperty was an [ESA][.[10]] Thus, Scheller had an [ESA] the entire time she lived there. In addition, [Scheller presented] the [Doctor's Note] from the social worker who was treating Scheller for PTSD at the time of the incident . . . .

Both Scheller's testimony and the [Doctor's Note] from her treating provider were uncontradicted. Therefore, Scheller has shown that the [ESA] may be necessary to afford her an equal opportunity to use and enjoy the dwelling.

Hearing Examiner Op. at 9-10 (italics added; internal citations omitted).

After reviewing the PHRC's findings of fact and the record testimony, [this Court] must disagree with [Petitioner's] position. [Petitioner's] assertions overlook the PHRC's role as fact[-]finder. In discrimination cases, the PHRC has been recognized as an expert whose judgment will not be lightly substituted. *Orweco Frocks,*

---

[10] *See* R.R. at 21a.

8

*Inc. v.* [*Pa.*] *Hum*[.] [*Rels.*] *Comm*[*'n*], . . . 537 A.2d 897 ([Pa. Cmwlth.] 1988). Moreover, credibility determinations are within the province of the PHRC as fact[-]finder. In the present matter the PHRC properly determined that [Scheller's] testimony was more credible than the testimony of [Petitioner].

*H.S.S. Vending Distribs. v. Pa. Hum. Rels. Comm'n*, 639 A.2d 953, 956 (Pa. Cmwlth. 1994). Accordingly, the record evidence established the existence of a *prima facie* case of Petitioner's failure to grant a reasonable accommodation.

Petitioner next argues that the requested accommodation imposed an undue hardship upon Petitioner, such that granting it would be unreasonable.

Section 44.4 of the PHRC's Regulations provides:

*Undue hardship*--The factors to be considered in determining whether an undue hardship is imposed by the requirement that a reasonable accommodation be made to a person's handicap or disability include, but are not limited to, the following:

(i) The overall size and nature of a . . . public accommodation, including number of employes, structure and composition of workforce, and number and type of facilities. However, financial capability to make reasonable accommodations shall only be a factor when raised as part of an undue hardship defense.

(ii) Good faith efforts previously made to accommodate similar handicaps or disabilities.

(iii) The extent, nature and cost of the reasonable accommodation needed.

(iv) The extent to which handicapped or disabled persons can reasonably be expected to need and desire to use, enjoy or benefit from the . . . public accommodation which is the subject of the reasonable accommodation in question.

(v) Legal or proprietary interest in the subject of proposed reasonable accommodations including

9

> authority to make the accommodations under the terms of a bona fide agreement, such as a lease, governing or describing rights and duties with respect to the subject.

16 Pa. Code § 44.4.

> Here, the Hearing Examiner concluded:

> Since Scheller established a *prima facie* case of discrimination, the burden shift[ed] to [Petitioner] to show that the accommodation requested[,] a puppy, was unreasonable. [Petitioner] argues that she did not agree to Scheller getting a puppy because puppies are not trained and the carpet in the apartment was fairly new and that [she] and her husband had issues with puppies in the past. These reasons do not show that a puppy was unreasonable. This finding is particularly true given that Scheller offered to pay for any damage the puppy caused. Yet, [Petitioner] acknowledged that she never responded to that offer.

> Since Scheller established a *prima facie* case and [Petitioner] failed to meet her burden of showing the requested accommodation was unreasonable[,] the Hearing Examiner finds in favor of Scheller on the reasonable accommodation claim.

Hearing Examiner Op. at 10 (italics added; internal citations omitted). This Court discerns no error in the Hearing Examiner's reasoning. Accordingly, the requested accommodation did not impose an undue hardship upon Petitioner, such that granting it would be unreasonable.

Lastly, Petitioner argues that the record evidence did not establish a *prima facie* case of retaliation. Specifically, Petitioner contends that she chose to terminate the Lease due to Scheller's behavior towards Petitioner, coupled with her refusal to leave Petitioner's property on June 8, 2019.

> A *prima facie* case of retaliation requires [Scheller] to show that (i) she was engaged in a protected activity; (ii) [Petitioner] was aware of the protected activity; (iii) subsequent to participation in the protected activity [Scheller] was subjected to an adverse [] action; and (iv)

10

there is a causal connection between participation in the protected activity and the adverse [] action. *Robert Wholey Co*[.]*, Inc. v.* [*Pa.*] *Hum*[.] [*Rels.*] *Comm*[*'n*]*, . . .* 606 A.2d 982, 983 ([Pa. Cmwlth.] 1992). Upon showing a *prima facie* case, the burden shifts to [Petitioner] to articulate a legitimate, non-discriminatory reason for its action. *See McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973)]. Finally, the burden shifts to [Scheller] to show that [Petitioner's] proffered reasons are pretextual. *Id.*

*Spanish Council of York, Inc. v. Pa. Hum. Rels. Comm'n*, 879 A.2d 391, 399 (Pa. Cmwlth. 2005).

> Relative to causation, the Hearing Examiner determined:

> The final element requires a showing that there is a causal connection between participation in the protected activity and the adverse action. "To establish the requisite causal connection a plaintiff usually must prove either (l) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, *or* (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 ([3d] Cir. 2007). While the Third Circuit has rarely found that timing alone is sufficient to establish causation, it has done so. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989)[] (holding that the plaintiff "demonstrated the causal link between the two by the circumstance that the discharge followed rapidly, only two days later, upon Avdel[ Corp.'s] receipt of notice of [the plaintiff's] [Equal Employment Opportunity Commission] claim.").

> Here the timing is "unduly suggestive" of discrimination as the notice to quit was dated just [five] days after Scheller initially requested the accommodation. Since Scheller satisfied all five elements of the *prima facie* case for her eviction claim, she established a *prima facie* case of retaliation on that claim.

Hearing Examiner Op. at 13 (italics added). This Court discerns no error in the Hearing Examiner's reasoning. Accordingly, the record evidence supports a *prima facie* case of retaliation.

11

## Conclusion

For all of the above reasons, the PHRC's Final Order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Erin Jackson,                          :
          Petitioner                :
                            :
          v.                       :
                            :
Pennsylvania Human                     :
Relations Commission,                  :   No. 46 C.D. 2023
          Respondent                :

## O R D E R

AND NOW, this 5th day of January, 2024, the Pennsylvania Human Relations Commission's December 19, 2022 Final Order is affirmed.

_____

ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Erin Jackson,                           :
                          Petitioner    :
                                        :
          v.                            : No.  46 C.D. 2023
                                        : Argued:  December 4, 2023
Pennsylvania Human Relations            :
Commission,                             :
                          Respondent    :


BEFORE:   HONORABLE ANNE E. COVEY, Judge
          HONORABLE STACY WALLACE, Judge
          HONORABLE MARY HANNAH LEAVITT, Senior Judge

CONCURRING OPINION
BY JUDGE WALLACE                                    FILED:  January 5, 2024


        I am constrained to agree with the Majority's decision but write separately to
emphasize this as a cautionary tale for landlords.  The application of the
Pennsylvania Human Relations Act (PHRA)[1] in this case is harsh, particularly
because Petitioner, Erin Jackson, previously allowed a grown dog on the property.
Nonetheless, the PHRA provides an important bulwark against discrimination,
including discrimination against those with mental health disabilities.  Whether a
landlord has one tenant or one thousand, he or she must comply with the PHRA.  A
landlord would be wise to familiarize himself or herself with all legal obligations
and consult an attorney.

                                        _____

                                        STACY WALLACE, Judge

_____
[1] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951-963.