## Bader v. Berenfield Containers

C.P. of Warren County, no. 536 of 1993.

*Gregory J. Hammond,* for plaintiff.
*Ronald Backer,* for defendant.

MILLIN, *P.J.,* March 13, 1996—The plaintiff's claim under the Pennsylvania Human Relations Act for wrongful discharge as an employee because of age came before the court at a bench trial on February 20, 1996. The testimony developed the following relevant facts:

The plaintiff was hired by Leonard Berenfield in November of 1983. Mr. Bader was 55 years old when he was hired, having been born March 5, 1928. The defendant, Berenfield Containers is a company that was started in 1914, making wooden barrels and now manufactures, among other things, steel drums. The plant in Clarendon, PA, where the plaintiff worked, has approximately 80 employees and comprises 60,000 square feet of space including an office building and two manufacturing buildings.

The plaintiff was hired as a plant engineer, which included the duties of installing and maintaining all equipment, supervising building construction and maintaining the buildings, handling the hazardous waste, purchasing maintenance supplies, arranging the truck

leases and maintaining the trucks. The plaintiff received regular yearly increases in salary. He commenced working in 1983 for approximately $28,000 and at the time of his discharge in 1992 was earning $48,080 per year.

Nothing detrimental had been placed in the plaintiff's personnel file until sometime after a new plant vice president and general manager was hired in May 1991.

Anthony Boscarino was hired as vice president and general manager in May 1991. At the time he was hired, Robert Greenberger was plant manager and was the plaintiff's immediate supervisor. At the time Mr. Boscarino was hired, Mr. Greenberger was 62 years old, and was the highest paid employee at Berenfield, receiving $54,000 per year. Within three months of Mr. Boscarino being hired, and specifically in August of 1991, Mr. Greenberger was told to resign or be fired. At the time of Greenberger's discharge, he was the oldest supervisory employee at Berenfield, with the exception of the plaintiff. (See plaintiff's exhibit 2—demographic data—time of Greenberger's discharge.) At the time of Greenberger's discharge, there was a memo in the file dated August 6, 1991 from Boscarino to Leonard Berenfield indicating that Boscarino had someone else in mind for the job, which states in part, "would pay $25K range. I have someone in mind abt 35 yr-38/family person, honest. . . ." (Plaintiff's exhibit 4.) Mr. Boscarino testified that the plant superintendent, Allen Shuford, who was 37 years old at the time, was promoted to replace Robert Greenberger.

Although Mr. Shuford would have become the plaintiff's immediate supervisor, Mr. Boscarino was unsure as to whether the plaintiff was told that Mr. Shuford had been promoted to replace Mr. Greenberger. The plaintiff, however, testified unequivocally that he was never told that Shuford had been promoted to Green-

berger's position, and in fact learned of the promotion by reading it in the newspaper in December of 1991.

In September of 1991, the plaintiff had emergency heart bypass surgery, and was off work for approximately two and one-half months, returning the week of Thanksgiving. At the time the plaintiff left work in September of 1991, there was no derogatory information in the plaintiff's personnel file.

On December 3, 1991, Allen Shuford did a performance review of the plaintiff, which was extremely derogatory. The plaintiff had returned to work on November 25, working half-days Monday, Tuesday, and Wednesday, and then returning to full-time duties only after the Thanksgiving Holiday, which included a day off on the following Monday for hunting season, making December 3 the first day of full-time work for the plaintiff after his medical leave.

Contrary to standard practice, the job performance evaluation was never discussed with the plaintiff, and in fact the plaintiff testified that his first notice concerning the evaluation was at the time of the hearing before the Human Relations Commission. Also contrary to standard practice, Shuford performed a job evaluation on Tom Donahue, who was the plaintiff's immediate subordinate. Mr. Boscarino testified that this was not normal procedure, that normally the immediate supervisor, who would have been the plaintiff, would have done the evaluation on Mr. Donahue. There was no explanation offered for this variance in standard procedure. The plaintiff received the lowest evaluation of all supervisors, and was the only supervisor with whom a performance evaluation was not discussed.

Mr. Boscarino testified that the reason that the plaintiff was not discharged on December 3 was that the company was trying to get him to stay and shape up. Mr. Boscarino

did not state why the plaintiff was not made aware of the alleged deficiencies in his performance. Mr. Boscarino stated that the performance review was not a factor in the ultimate discharge of the plaintiff, but was merely the catalyst which caused the company to review the position and to come to the conclusion that a plant engineer was no longer needed.

Mr. Boscarino testified that in July of 1992, the company made the decision to eliminate the position of plant engineer, and therefore the plaintiff was fired. Mr. Boscarino testified that at the time the plaintiff was fired, he was not the oldest supervisor employed by the company, however the information supplied by the company to the plaintiff (plaintiff's exhibits 2 and 6) indicate that he was. At the time of his discharge in July of 1992, the plaintiff was 63 years of age and was the oldest and highest paid supervisor employed by the defendant.

At the time of his discharge, the plaintiff was presented with an agreement to be signed, which contained a waiver of age discrimination and provided that the plaintiff would receive severance pay if the release were signed.

At the time of the plaintiff's discharge, some of his duties were assigned to Tom Aldrich, who was 32 years old. Some of the duties were assigned to Lambert Kerr, who was 43 years old, and some were assigned to Tom Donahue, who was 50 years old. Although the defendant maintained that job performance was not a consideration in the discharge of the plaintiff, a memo from Allen Shuford to Anthony Boscarino, dated April 1992, indicates extremely poor job performance, and insubordination and recommends discharge. The contents of this memo were unknown to the plaintiff until the time of the hearing before the Human Relations

Commission. The plaintiff denied ever discussing with Shuford, Shuford's alleged criticisms of his performance. This testimony was uncontradicted by the defendant.

The Pennsylvania Human Relations Act (43 Pa. §951 et seq.) makes it unlawful for any employer to discharge an employee because of age. (Section 955.) Age is defined by the Act to include "any person between the ages of 40 and 70 inclusive." (Section 954(h).)

The Pennsylvania Supreme Court has adopted the analysis used by the United States Supreme Court in interpreting the Federal Age Discrimination in Employment Act (29 U.S.C. §621 et seq.) In *General Electric Corp. v. Pennsylvania Human Relations Commission,* 469 Pa. 292, 365 A.2d 649 (1976), the Pennsylvania Supreme Court adopted the reasoning of the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 817, 36 L.Ed.2d 668 (1973). Under these cases, the courts have held that the burden is initially on the plaintiff to prove a prima facie case, which if proved, then raises a presumption of discrimination. The prima facie case is established by showing the following:

(1) The plaintiff belongs to the protected class.

(2) The plaintiff was performing duties that he was qualified to perform.

(3) The plaintiff was discharged from his position.

(4) There was a continuing need for the services that the plaintiff had been performing. *Montour School District v. Human Relations Commission,* 109 Pa. Commw. 1, 530 A.2d 957 (1987), and *Orwecko Frocks Inc. v. Human Relations Commission,* 113 Pa. Commw. 333, 537 A.2d 897 (1988).

"A plaintiff may establish her prima facie case of age discrimination by proving that she (1) belongs to a protected class; (2) was qualified for the position; (3) was dismissed despite being qualified; (4) ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination." (citation omitted) *Dibiase v. SmithKline Beecham Corp.*, 847 F. Supp. 341 (E.D. Pa. 1994).

The Commonwealth Court in *Orwecko* discussed the modification of the fourth element of the prima facie test from that set forth in *Dibiase* which states that the person discharged was replaced by a younger person to the fourth element set forth in *Montour* and *Orwecko* which states that "there was a continuing need for the services which the plaintiff had been performing."

"Employer argues that the burden as set forth in the adjudication would, under the facts here, eliminate the fourth requirement of the prima facie case in *Loeb v. Textron Inc.*, 600 F.2d 1003 (1st Cir. 1979). First, we do not agree that the fourth requirement as enumerated in *Loeb* would be eliminated, merely lessened. Second, our State Supreme Court, in discussing the prima facie burden in cases filed with the commission, recently stated that 'it is appropriate to the remedial purpose of the [Pennsylvania Human Relations] Act that the prima facie case not be an onerous one.' *Allegheny Housing Rehabilitation Corp. v. Human Relations Commission,* 516 Pa. 124, 532 A.2d 315 (1987). . . . It explains that in situations involving a company-wide reduction in force, if proof that a discharged employee is replaced is required, the company could systematically terminate its oldest and generally highest paid employees and redistribute their functions among younger, less senior employees and escape liability under the Act if no new employees are added. We do

not think that such result was intended by the legislature." *Orwecko, supra* at 338, 537 A.2d at 900.

While the actions of the defendant may not have amounted to what would normally be considered a "company-wide reduction in force" this court feels that the situation is analogous, and thus applies the standard set forth in *Montour* and *Orwecko*.

The court finds that the plaintiff has established a prima facie case. It is not challenged that the plaintiff belongs to the protected class, nor that he was performing duties that he was qualified to perform and it is not challenged that he was discharged from his position. The defendant takes the position that there was no longer a continuing need for the services that the plaintiff had been performing but the court finds that virtually all of the tasks which the plaintiff had been performing continue to be needed by the employer. There was testimony that the plaintiff's responsibilities for supervising new construction are no longer needed because no further new buildings have been constructed since his discharge, but the remainder of his duties have been reassigned to other younger individuals.

Once a plaintiff has established a prima facie case of age discrimination under the analysis model, as set forth in *General Electric Corp. v. Pennsylvania Human Relations Commission, supra,* the burden shifts to the defendant to come forward with some evidence of a legitimate nondiscriminatory reason for the plaintiff's discharge.

"After a plaintiff has established a prima facie case of age discrimination, the burden shifts to defendant to dispel the adverse inference by articulating some legitimate, nondiscriminatory reason for the employee's rejection." (citations omitted) *Duffy v. Wheeling Pittsburgh Steel Corp.,* 738 F.2d 1393 (1984).

The defendant puts forth as its alleged nondiscriminatory reason for the discharge, that the plaintiff's position was eliminated. Defendant argues that after taking a close look at the plaintiff's position, it was determined that the defendant no longer needed a plant engineer. In support of that, the defendant argues that it has not hired a plant engineer since the plaintiff's discharge, and the plant work has been completed in a satisfactory manner.

The defendant argues that since the plaintiff has not been replaced, the court must accept this reasoning, and may not find that the alleged reason is pretextual.

Clearly if the court were so bound, then employer defendants could escape liability in any age discrimination discharge case, simply by claiming position elimination and waiting until the judicial process had completed before replacing the discharged employee. Therefore, the court must take a close look at the facts of the case to determine whether or not the defendant's reason, as stated, is legitimate or pretextual. *Montour, supra; Orwecko, supra.*

The burden of proof in this regard remains with the plaintiff.

"Once the defendant satisfies the requirement of articulating a nondiscriminatory reason for the employee's discharge, the ultimate burden remains with the plaintiff to prove to the trier of fact that the defendant intentionally discriminated against the plaintiff." (citation omitted) *Duffy, supra* at 1395.

The Pennsylvania Supreme Court has further explained this burden as follows:

"It was never intended, however, that the previously described analytical method would immunize members of 'protected classes' from adverse employment de-

cisions simply by dint of their class membership. Nothing about the Human Relations Act removes its operation from the bedrock concept of our jurisprudence that one who alleges wrongdoing must supply the proof. The stated analysis is no more than an aid to evaluating the proof. If the plaintiff produces sufficient evidence that, if believed and otherwise unexplained, indicates that more likely than not discrimination has occurred, the defendant must be heard in response. Absent a response, the 'presumption' of discrimination arising from the plaintiff's prima facie case stands determinative of the factual issue of the case. In other words, if the employer rests without producing evidence, the plaintiff must prevail if he or she has produced sufficient evidence to make out a prima facie case. If, however, the defendant offers a nondiscriminatory explanation for the dismissal, the presumption drops from the case. As in any other civil litigation, the issue is joined, and the entire body of evidence produced by each side stands before the tribunal to be evaluated according to the preponderance standard: Has the plaintiff proven discrimination by a preponderance of the evidence? Stated otherwise, once the defendant offers evidence from which the trier of fact could rationally conclude that the decision was not discriminatorily motivated, the trier of fact must then 'decide which party's explanation of the employer's motivation it believes.' (citation omitted) The plaintiff is, of course, free to present evidence and argument that the explanation offered by the employer is not worthy of belief or is otherwise inadequate in order to persuade the tribunal that her evidence does preponderate to prove discrimination. She is not, however, entitled to be aided by a presumption of discrimination against which the employer's proof must 'measure up.' " *Allegheny Housing Rehabilitation Corp. v. Penn-*

*sylvania Human Relations Commission,* 516 Pa. 124, 131, 532 A.2d 315, 319 (1987).

Here the court finds that the defendant's reason of elimination of the position of plant engineer is pretextual. Several matters cast severe doubt about the authenticity of this reason. If Mr. Boscarino were correct in his testimony that in December of 1991, he wanted to correct any deficiencies in the plaintiff's job performance so that he could stay, then why were the alleged deficiencies never discussed with the plaintiff? Why was the plaintiff never told that Allen Shuford had been made his supervisor? Why were there never any meetings between Allen Shuford and the plaintiff to discuss job deficiencies? Why was the job evaluation completed by Allen Shuford upon the plaintiff on December 3 when the plaintiff had only been to work for three half-days, prior to the job evaluation? Why did Allen Shuford perform a job evaluation on the plaintiff's immediate subordinate rather than the plaintiff? Why was the plaintiff treated differently than the other supervisors who were advised of their performance evaluations? Why were the plaintiff and Greenberger asked to sign releases releasing the company from any liability for age discrimination? The defendant presented no satisfactory explanations for any of the foregoing.

The court finds that the plaintiff has met his burden of proof that the defendant has engaged in an illegal discriminatory action by discharging the plaintiff, based upon age.

The court will next consider the matter of damages. The plaintiff also has the burden of proof in this regard.

Plaintiff established that his salary was $48,080 per year at the time of his discharge. Plaintiff's uncontradicted testimony was that he had no plans to retire, and had planned on working another five or six years.

He further testified without contradiction that his health was excellent, that his heart surgery had been completely successful and had eliminated any problem with his heart.

Upon being discharged the plaintiff applied for and received unemployment compensation benefits, and complied with the requirements of the unemployment office concerning attempts to seek employment during the time that he was receiving benefits. He further stated that he had made some phone calls to persons in industry that he knew, looking for job opportunities. He received no job interviews and has worked nowhere since being discharged by the defendant.

Plaintiff received $7,107 in unemployment compensation benefits for the remainder of 1992, and received $8,904 in unemployment compensation benefits for 1993. The plaintiff began receiving social security benefits in January of 1993, and received $1,022 per month in 1993. No figures for social security benefits were given beyond 1993, except that the amount was stated to have increased.

The plaintiff claims damages for lost wages and for humiliation and mental anguish. The Pennsylvania Supreme Court has held that plaintiffs may, under the Pennsylvania Human Relations Act, seek damages for humiliation and mental anguish. *Pennsylvania Human Relations Commission v. Zamantakis,* 478 Pa. 454, 459, 387 A.2d 70, 73 (1978).

Here, the defendant argues that the plaintiff has a duty to mitigate damages by seeking suitable employment and that the plaintiff has failed to do so. It is true that any award must be reduced "by any amount the plaintiff actually earned or could have earned through the exercise of reasonable diligence." *Gallo*

*v. John Powell Chevrolet Inc.,* 779 F. Supp. 804 (M.D. Pa. 1991). In *Gallo,* the court pointed out that,

"Plaintiffs have a duty to mitigate damages by seeking suitable employment, and those who fail to carry out this obligation forfeit their right to continuing back pay. (citation omitted) Plaintiffs are not required to seek out or accept any position which may be available. They are not, for example, required to 'go into another line of work, accept a demotion, or take a demeaning position' to preserve their right to back pay (citation omitted)." *Gallo, supra* at 813.

In *Gallo,* the court pointed out that the burden of proving that plaintiff had failed to exercise reasonable diligence in seeking out other employment is on the employer and stated,

"This burden may be satisfied by proving that: (1) Substantially equivalent positions were available; and (2) The plaintiff failed to use reasonable care and diligence in seeking such positions. Plaintiff has no obligation to submit evidence of reasonable diligence on her part until defendant has established these elements." (citation omitted) *Id.* at 813, 814.

In this case, the defendant produced no evidence that substantially equivalent positions were available.

A further question arises as to whether any award for back pay should be reduced by unemployment compensation benefits and social security. The Third Circuit has ruled under federal law that the award should not be reduced by unemployment benefits, as such benefits are collateral and should not be used to reduce the defendant's legal obligation to make the plaintiff whole. *Craig v. Y&Y Snacks Inc.,* 721 F.2d 77, 83 (3d Cir. 1983).

The Pennsylvania Commonwealth Court has also held that unemployment compensation benefits need not be deducted from back pay awards. *Williamsburg Community School District v. Pennsylvania Human Relations Commission,* 99 Pa. Commw. 206, 212, 512 A.2d 1339, 1342 (1986); *Pennsylvania State Police v. Pennsylvania Human Relations Commission,* 116 Pa. Commw. 89, 542 A.2d 595 (1988).

While there is federal court authority for the proposition that the award must be reduced by the amount of social security disability paid to the claimant, *Nelson v. J.C. Penney Co.,* 858 F. Supp. 914 (D. Iowa 1994), this court could find no Pennsylvania cases which discussed the subject. Further the court can find no reason why social security payments would be treated differently than unemployment compensation payments, therefore the court shall not reduce its award by either the amount of social security or unemployment compensation benefits.

The court therefore calculates the damages due the plaintiff as follows:

## BACK PAY

| | |
|---|---|
| 1992 pro rated from July 10 to December 31 | $ 22,919.73 |
| 1993 | 48,080.00 |
| 1994 | 48,080.00 |
| 1995 | 48,080.00 |
| 1996 pro rated to the date of Hearing 2/20 | 6,716.77 |
| Total back pay | $173,876.50 |

## FRONT PAY

| | |
|---|---:|
| 1996 pro rated from Hearing date, 2/20-12/31 | $ 41,363.22 |
| 1997 pro rated from 1/1-7/10 | 25,290.08 |
| Total front pay | $ 66,653.30 |

The court awards damages for humiliation and embarrassment of $1,500.

Therefore, the court enters the following order:

## VERDICT

And now, March 13, 1996, the court finds in favor of the plaintiff and against the defendant and awards damages in the amount of $242,029.80. The prothonotary is directed in accordance with the Human Relations Act to serve a copy of this verdict and opinion upon the Pennsylvania Human Relations Commission.